O. L. PITNEY v. W. J. ELDRIDGE *et al.*

*No. 9810.*

1. HOMESTEAD—*part of, not abandoned by temporary non-occupancy.* The temporary non-occupancy of a part of a homestead, where entire dominion over the same is not surrendered, does not necessarily operate as a waiver or abandonment of the homestead right.

2. ———— *so held where ten years' lease given of part for nursery.* The owner of a homestead of forty acres leased a portion of the same for the purpose of propagating and handling nursery stock, for a term of ten years, giving to the lessee a privilege of renewing the lease for another term of ten years, at a stipulated cash rental, payable semi-annually; and providing that, if default was made or there was a breach of any of the covenants of the lease, and when the lease was terminated, the owner might re-enter and take exclusive possession. A fence was erected on the line separating the leased portion of the premises from that exclusively reserved to the owner. About four years afterward, a controversy arose between one holding a mortgage upon the entire tract and another who claimed a judgment lien on the leased premises. *Held,* under the circumstances of the case, that the leased premises remained a part of the homestead, and were not subject to the lien of the judgment.

Error from Crawford District Court. Hon. J. S. West, Judge. Opinion filed May 8, 1897. *Reversed.*

*Fuller & Randolph*, for plaintiff in error.

*D. B. Van Syckle* and *E. W. Arnold*, for defendant Haldeman.

JOHNSTON, J.   W. J. Eldridge was the owner of a forty-acre farm, situated in Crawford County, which he, with his family, occupied as a residence and home-stead.   In January, 1886, he and his wife joined in a lease of a part of the tract to the Girard Nursery Company for a period of ten years, with the privilege of re-renting it for another term of ten years.   The abso-lute control of a portion of the tract on which his home and buildings were situated, was reserved. Under the terms of the lease, the rented portion was to be used by the company for propagating and hand-ling nursery stock and carrying on the nursery busi-ness.   It was stipulated that the rental should be two hundred dollars per year, payable in semi-annual in-stallments of one hundred dollars on the first days of June and December each year.   It was provided that, if default was made in the payment of rent or there was a breach of any of the covenants of the lease, the Eldridges might re-enter and take possession, the company waiving notice to quit; and there was the further provision that, at the termination of the lease, the company should deliver up the premises to the Eldridges.   When the lease was executed, and for some time afterward, Eldridge was an officer and stockholder in the company.   Buildings were erected on the leased premises, by the company, which were used as an office and for handling nursery stock.   About four years after the lease was executed, a dispute arose between Eldridge and the company as to the extent of the leased premises, and the com-pany erected a picket fence around the portion which it claimed was included in the lease.   The dispute

was carried into court, where the boundaries of the leased premises were determined; after which the fence erected by the nursery company was placed upon the line so determined. On April 7, 1890, the Eldridges borrowed two thousand dollars from O. L. Pitney, and gave him their promissory note, and a mortgage upon the forty-acre tract of land. Eldridge also owed H. W. Haldeman the sum of $2,500, to recover which, Haldeman, on January 22, 1890, brought an action; and on April 14, 1890, a judgment in his favor was rendered for $2,583.33. The April, 1890, term of said court, at which the judgment was rendered, convened April 2, 1890. There were other liens against the premises, but, in view of the conclusion which we have reached, a recital of the same is unnecessary. Default was made on the mortgage given to Pitney, and, when he brought this action of foreclosure, Haldeman, the judgment creditor, set up his judgment, claiming that the leased premises were no part of the homestead of the Eldridges, and were, therefore, subject to the lien of the judgment. The trial court held that, by the execution of the lease, Eldridge and his wife waived their homestead rights in that portion of the farm which was leased to the nursery company; and that, from and after the execution of the lease, it was divested of its homestead character and became subject to the payment of the debts of Eldridge. Accordingly, the Haldeman judgment was adjudged to be a lien upon the leased premises prior to that of the Pitney mortgage. For the same reason, the judgment lien was determined to be prior to a subsequent mortgage and other liens created by the Eldridges.

The objections made to the record are deemed to be without merit, and will not prevent the consideration

of the questions presented for review ; the principal one being, whether the leasing of a part of the homestead to, and its use by, the nursery company operated as a waiver or abandonment of the homestead right.  If the right was destroyed, the judgment became a lien as of the first day of the term of the court at which it was rendered, and that was five days before the first mortgage was made and recorded.  Up to the time of the execution of the lease, at least, the whole forty-acre tract was the homestead of the Eldridges.  It was outside of the corporate limits of a city, was held in the same ownership, and occupied and used as an entirety.  The waiver or abandonment of a homestead after it has once been established in good faith, must, of course, be largely a question of intention.  While occupancy in good faith is essential to the exemption right, it is not required that the owner should actually occupy the whole of the tract of land which he claims as his homestead.  It is often impracticable for the owner to actually use every part and portion of the tract, especially where it consists of a farm in the country ; and hence it has been held that a constructive use is sufficient, providing it is not devoted to purposes inconsistent with the homestead claim.  *Morrissey v. Donahue,* 32 Kan. 646.

Temporary absence from, or non-occupancy of, the premises, or a portion of the same, where there is an intention to return and re-occupy them, does not operate as a waiver or abandonment of the homestead right.  So, it has been held that a mere temporary absence, although it may be prolonged for months or years, is not sufficient to divest the homestead right; and the fact that the premises were rented during the temporary absence is not of itself sufficient to destroy their homestead char-

1. Homestead not abandoned, when.

acter.    *Hixon v. George,* 18 Kan. 253 ; *National Bank
v. Warner,* 22 id. 537 ; *Garlinghouse v. Mulvane,* 40 id.
428 ; *Shirack v. Shirack,* 44 id. 653.

The fact that the owner did not exclusively occupy
the entire homestead was held, in *Bebb v. Crowe* ( 39
Kan. 342), not to destroy the homestead right ; and,
in *Huffman v. Hill* (47 id. 613), it was said that
" it follows from the decisions made by this and other
courts of last resort that it makes no difference that
the homestead or a part thereof may be used for some
other purpose than as a homestead, where the whole of
it constitutes only one tract of land not exceeding in
area the amount permitted to be exempted under the
homestead exemption laws, and where the part claimed
as not a part of the homestead has not been totally
abandoned as a part thereof by making it, for in-
stance, another person's homestead or a part thereof,
or by using it or permitting it to be used in some
other manner inconsistent with the homestead in-
terests of the husband and wife." In the present
case, Eldridge did not, by the lease,
surrender entire dominion over the leased
land. It was stipulated therein that
he should re-enter at the termination of the lease,
and while it was for quite a long term, it was
provided that the rent was to be paid in six-month in-
stallments, and a default in the payment of any of
them entitled him to re-enter and take exclusive pos-
session.    Under the lease, he was undoubtedly entitled
to go upon the land and see that waste was not com-
mitted, and that the covenants of the lease and the
requirements of the contract were being performed.
As we have seen, actual and continual occupancy of
the entire farm was not essential ; and the use to which
it was put was not inconsistent with the homestead
interests.    It had been used in part for the growth of

2. Lease of part
   for 10 years not
   abandonment.

nursery stock before it was leased, and this was the use to which it was afterward devoted by the tenant. For a time, Eldridge was himself an officer and stockholder in the company that leased the land; and we see nothing in his conduct indicating a permanent surrender of the exemption right. Manifestly, a permanent non-occupancy of the premises was not contemplated by him, for on the face of the lease there was his declared purpose to re-enter and exclusively occupy the premises. The judgment creditor places much reliance on the case of *Ashton v. Ingle* (20 Kan. 670). There, the homestead claimed was city property, and a part of the premises had been leased to, and had become the homes and residences of, other persons and their families. It was there held (page 681) that "the words 'homestead' and 'residence' cannot be intended to include some other and independent family's home and residence." Even in that case, a constructive occupancy of the homestead was recognized. Here, although buildings were erected by the nursery company for its own purposes, no residence was ever established on the leased premises by the company or any of its members, nor was the tract ever made the home of another. The homestead provision is a remedial one, and it has been the rule in this State to construe it liberally in favor of the exemption. Applying that rule in this case, we think the leased land was not divested of its homestead character, and therefore that it was not subject to the lien of the judgment obtained by Haldeman.

It is contended that the homestead exemption is a personal privilege of the debtor, to be claimed alone by him, and, as the Eldridges were in default in the trial court, Pitney cannot claim a homestead for them and raise a question as to the homestead character of the land. It has been held that, whenever a contest

arises between two parties as to which has the prior or superior lien upon property owned by another, either party may show any fact that will defeat the other party's lien or postpone it, although the fact to be so shown may be that the property is the homestead of the third party. *Howell, Jewett & Co. v. McCrie*, 36 Kan. 636; *Elwell v. Hitchcock*, 41 id. 130; *Insurance Co. v. Nichols*, 41 id. 133; *Gas Co. v. Land Co.*, 54 id. 533.

Under the facts, the mortgages were entitled to preference over the lien claimed upon the judgment; hence the judgment of the District Court will be reversed, and the cause remanded with directions to enter judgment giving priority to the mortgage liens.