No. 31,157

THE FARMERS STATE BANK OF BELVUE, *Appellant*, v.
MRS. J. D. WEEKS, *Appellee*.

(26 P. 2d 262.)

Opinion filed November 11, 1933.

*A. E. Crane, A. Harry Crane,* both of Topeka, *E. C. Brookens, E. S. Francis* and *H. L. Hart,* all of Westmoreland, for the appellant.

*J. E. Addington* and *Howard A. Jones,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Was the farm of Mrs. J. D. Weeks, sometimes known as Mabel E. Weeks, comprising 132 acres, occupied by her as a homestead, and therefore exempt from sale upon execution to satisfy a judgment for debt to the Farmers State Bank of Belvue? The Weeks family lived in the town of Belvue, where Mr. Weeks, the husband, died in 1915. Mrs. Weeks and her five children continued to live there until 1927, when she went to Topeka, temporarily, for the alleged purpose of educating her children. She sold the Belvue property in 1929, and at that time moved some of her furniture and household goods to Topeka—where the children attended school—and a substantial part of the same to the farm in question. She took to the farm two beds, a table, stove and some dishes, and thus, as she said, moved back to the farm. She rented the farm to her son, Floyd, which he operated up to February, 1932, reserving two rooms in the house for herself and the family. In Febru-

ary, 1932, she let part of the house to Harry Steele, and in leasing it she reserved two of the seven rooms for her occupancy. She also reserved a part of the haymow and some bins for grain.

There is testimony that she regarded and claimed the farm as her homestead and had only gone to Topeka temporarily, to educate her children. That she had gone to the farm on week-ends and when "school was out." As to her occupancy of part of the house Steele, the tenant, testified that she came to the house occasionally and occupied the reserved rooms, where she prepared her own meals and stayed while the children were absent in school; and at vacation they, too, came to the farm. A married daughter testified that she visited her mother at the farm and also when her boys were there. She spoke of the equipment in the house for living purposes, saying that there were beds, mattresses for them, sheets, quilts, bedspreads and pillows; that there was a cook stove, oil stove, breakfast table, chairs, rugs and a cupboard with dishes in it. She also said that her mother was living in the house, and that the children were there at week-ends. On the testimony the trial court held that Mrs. Weeks had claimed and had occupied the farm as a homestead for herself and her children and, therefore, adjudged that the execution levied on the property be withdrawn and canceled. The facts and circumstances related tend to show that the claim and occupation of the farm as a homestead was made in good faith, and that it had not been abandoned. She was on the farm occasionally, but most of the time was in Topeka with the children, where they attended school, and all were on the farm at the time of the trial.

Mrs. Weeks owned an undivided half interest with the children in the farm and had the unquestioned right to occupy it as the homestead of the family. If there was a real occupancy under the claim of homestead right, it could not be defeated by a temporary absence from the farm, such as going to another place for the purpose of educating her children. She testified that she intended to live on the farm all the time as soon as the children had finished school, and that she had no other home to which to go, saying it was "the only home I have." It appears that her son occupied the farm as a renter for four or five years after 1927. A wife, after the death of her husband, is entitled to the homestead, even if she be the sole occupant. (*Cross v. Benson,* 68 Kan. 495, 75 Pac. 558; *Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273; *Koehler v. Gray,* 102 Kan. 878, 172

Pac. 25.) Here the homestead right, if it existed, was for the benefit of the widow and children; the widow, acting for the family, claimed the homestead and to have established occupancy of it. She appears to have furnished the home with facilities to make it a reasonably fit place in which to live, and she says it was the only home that she owned. Under the evidence we think that her action and statements and claims were made in good faith, and sufficient to establish a residence and home upon which to base the claim of a homestead right. The intent of the claimant enters largely into the creation and acquiring of a homestead. It is true, as appellant contends, that a mere representation of a purpose to occupy is not enough to establish a homestead right. There must be a *bona fide* intent and an actual occupancy. Representations may be proven to show intent, likewise the physical acts of the claimant in the matter of occupancy may be shown, to prove that the acts concur with the declared intent. The reservation of a part of the residence and the equipment of the same as a home, followed by actual occupancy when not in Topeka with the children, tends to show good faith in establishing a homestead. When land is once impressed with the homestead character, the right is not lost by a temporary absence therefrom. In *Fredenhagen v. Nichols & Shepherd Co.*, 99 Kan. 113, 160 Pac. 997, it was held that—

"A homestead is not abandoned by its owner where he, intending to return, leaves with his family and moves to a city in another county to educate his children, though later he sells the homestead and never returns." (Syl. ¶ 1.)

See, also, *Palmer v. Parish*, 61 Kan. 311, 59 Pac. 640; *McGill v. Sutton*, 67 Kan. 234, 72 Pac. 853; *Strackeljohn v. Campbell*, 136 Kan. 145, 12 P. 2d 812.

Attention is called to the fact that Mrs. Weeks had voted at an election in Topeka. This, although proper evidence in the case, is not controlling. She may have been ill-advised as to her right to vote there and been an illegal voter. It also appears that in 1932 she voted at an election in the county in which her farm is situated. In *McGill v. Sutton*, supra, the homestead claimant had moved to town temporarily for medical treatment and while away from the homestead voted at a town election. He voted there because he said he believed that he must vote "where he slept and had his washing done." It was held that he was entitled to a homestead exemption although he voted elsewhere while temporarily absent from the homestead. (See, also, *Garlinghouse v. Mulvane*, 40 Kan. 428, 19

Pac. 798; *Pitney v. Eldridge,* 58 Kan. 215, 48 Pac. 854; *Mercantile Co. v. Blanc,* 79 Kan. 356, 99 Pac. 601; *Schlaudt v. Hartman,* 105 Kan. 112, 181 Pac. 547.)

Whether Mrs. Weeks had actually and in good faith claimed and occupied the farm as a homestead was a question of fact for the trier of the facts, and whether she later abandoned or lost the homestead right by absence or by voting in another district was likewise a question of fact, and both have been decided in her favor.

We think there is evidence to support the finding and judgment of the district court, and hence the judgment is affirmed.

HUTCHISON, J., not sitting.