No. 68,925

BANK OF KANSAS, *Appellant,* v. CHARLES W. DAVISON and CON-
NIE L. DAVISON; THE STATE OF KANSAS DEPARTMENT OF REV-
ENUE; FIRST NATIONAL BANK OF KINGMAN; FIRST FEDERAL
SAVINGS AND LOAN ASSOCIATION OF HUTCHINSON; TRANSAMER-
ICA COMMERCIAL FINANCE CORPORATION; PATRICIA O. SIMPSON;
WURLITZER MUSIC STORES, INC.; BANK OF INMAN; YAMAHA
CORPORATION OF AMERICA; EMPRISE BANK, and THOMAS
BURNS, *Appellees.*

(861 P.2d 806)

Opinion
filed October 29, 1993.

*Stuart R. Collier,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita,
argued the cause, and *Roger K. Wilson,* of the same firm, was with him
on the briefs for appellant.

*John Michael Hale,* of Kansas Department of Revenue, argued the cause, and *Jay D. Befort,* of the same agency, was with him on the brief for appellee Kansas Department of Revenue.

The opinion of the court was delivered by

ABBOTT, J.: Bank of Kansas appeals the validity of sales tax liens and their attachment and enforceability against homestead property. The trial court held the Bank lacked standing and was estopped from challenging the validity of the sales tax liens and ordered the homestead property subject to the sales tax liens sold to satisfy the liens. This appeal followed.

Charles W. and Connie Davison own real estate in Reno County that is now and has been their homestead since they purchased it in March 1969.

On July 15, 1988, the Kansas Department of Revenue (KDR) filed a sales tax warrant with the Clerk of the District Court of Reno County, Kansas, Case No. K-587-B, in the principal amount of $24,041.99 against Charles W. Davison, Connie Davison, and Nelson Music Co., Inc. On September 2, 1988, KDR filed a sales tax warrant with the Clerk of the District Court of Reno County, Kansas, Case No. K-592-A, in the principal amount of $10,363.10 against Charles W. Davison (and others not parties herein).

On April 25, 1990, Charles W. Davison and Connie Davison executed a mortgage on the real estate in favor of Bank of Kansas. The mortgage was recorded in the Reno County Register of Deeds Office in the principal amount of $140,000.

On October 11, 1991, Bank of Kansas commenced a foreclosure action against Charles W. Davison and Connie Davison in the Reno County District Court, joining as defendants KDR and other parties alleged to have liens against the Davisons individually or jointly or against the real estate. KDR filed its answer and cross-claim on November 12, 1991, seeking foreclosure of its sales tax liens against Charles W. Davison and Connie Davison. Both Bank of Kansas and KDR requested the district court to determine the priority of the liens involved.

Bank of Kansas and KDR each moved for partial summary judgment. Bank of Kansas contended that KDR's sales tax liens were not valid because KDR failed to follow the proper filing procedure and that the Homestead Act, Article 15, § 9 of the

Kansas Constitution, prohibited attachment and enforcement of the sales tax liens because the real estate was the homestead of the Davisons. KDR contended that Bank of Kansas lacked standing to challenge the sales tax liens, that Bank of Kansas was estopped from collaterally attacking the sales tax liens, that the liens were in fact properly filed, and that sales tax liens can attach to and be enforced against homestead property.

The trial court held that Bank of Kansas lacked standing to assert defects in KDR's filing of the sales tax warrants, that the sales tax judgments did attach to the homestead real estate, that the Bank's motion for partial summary judgment was denied, and that KDR's motion for partial summary judgment was granted. KDR's liens were declared first and prior liens.

The trial court determined that KDR's sales tax liens in the total amount of $52,254.58 plus interest were first and prior liens against the real estate and ordered the real estate sold to satisfy these liens if the Davisons did not pay the liens within 10 days. The court also ordered that Bank of Kansas have a judgment against the Davisons in the amount of $139,631.60 plus interest, title insurance expense, and all expenses incurred by Bank of Kansas in preserving the real estate, that the mortgage be foreclosed, and that the real estate be sold if the judgment was not paid within 10 days. The judgment in favor of Bank of Kansas was determined to be a second lien on the real estate.

## I. STANDING

KDR asserts that Bank of Kansas lacks standing to challenge the sales tax liens because the Bank was not a "real party in interest" to the filing of the sales tax liens. KDR contends that Bank of Kansas is attempting to step into the shoes of the Davisons and assert the rights the Davisons might have. KDR further contends that the Davisons no longer have a right to challenge the sales tax liens because they did not pursue the administrative and judicial remedies available to them.

KDR has misconstrued Bank of Kansas' attempts to challenge the sales tax liens. Bank of Kansas is not stepping into the Davisons' shoes and challenging the sales tax liens on behalf of the Davisons. Rather, Bank of Kansas is challenging the sales tax

liens to protect its own interest in having a lien superior to that of KDR.

More than 100 years ago this court decided a priority controversy between a mortgage lien and a judgment lien as asserted against homestead property. *Insurance Co. v. Nichols*, 41 Kan. 133, 21 Pac. 111 (1889). There, this court stated:

"[T]he plaintiff [mortgagee] below had the unquestionable right to show [that the property in question was the homestead of the debtor] for the purpose of showing that beyond all question its mortgage lien was prior and superior to the supposed judgment lien of the German Insurance Company. It had the right to show this fact, not for the benefit of [the debtor], but for the benefit of itself and for the protection of its own rights and interests. [Citation omitted.] Indeed, it is our opinion that whenever a contest arises between two parties as to which has the prior or superior lien upon property owned and occupied by a third person, either party may show any fact that will defeat the other party's lien, or postpone the same so as to render it a subsequent or inferior lien, and this although the fact to be so shown may be that the property is the homestead of the third party." 41 Kan. at 136.

See *First Nat'l Bank v. Tyler*, 130 Kan. 308, 286 Pac. 400 (1930); *Pitney v. Eldridge*, 58 Kan. 215, 48 Pac. 854 (1897); *Elwell v. Hitchcock*, 41 Kan. 130, 21 Pac. 109 (1889).

KDR directs this court's attention to the proposition that only the "real party in interest," and not merely any party who will benefit from an adjudication, has standing to sue. See *Ryder v. Farmland Mut. Ins. Co.*, 248 Kan. 352, 807 P.2d 109 (1991); *Joe Self Chevrolet , Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, 802 P.2d 1231 (1990); *Citizens State Bank of Grainfield v. Kaiser*, 12 Kan. App. 2d 530, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988). KDR contends, therefore, that even though Bank of Kansas will benefit from an adjudication of the validity of KDR's sales tax liens, Bank of Kansas is not the real party in interest.

K.S.A. 1992 Supp. 60-217(a) does require that an action be prosecuted in the name of the real party in interest. The real party in interest is " 'the party who, by the substantive law, has the right sought to be enforced.' " *Torkelson v. Bank of Horton*, 208 Kan. 267, 270, 491 P.2d 954 (1971) (quoting 3A Moore's Federal Practice § 17.02 [2d ed. 1970]). See *Ryder*, 248 Kan. 352, Syl. ¶ 5. A discussion of the "real party in interest" is inapplicable here, however. Bank of Kansas is not seeking relief

from KDR, but merely a determination that its mortgage lien has first prio

The mistake KDR makes is in its argument that Bank of Kansas cannot challenge the integrity of the prior perfected tax judgments of KDR. This argument directly contradicts the cases cited above which conclude that a mortgagee has the right to show any fact that will defeat or postpone the interest of a competing lien creditor. *First Nat'l Bank*, 130 Kan. at 310; *Pitney*, 58 Kan. at 220-221; *Insurance Co.*, 41 Kan. at 136; *Elwell*, 41 Kan. at 132.

KDR also asserts that only natural persons have the right to claim the homestead exemption. Neither of the cases KDR relies on, *Bellport v. Harder*, 196 Kan. 294, 411 P.2d 725 (1966), and *Swenson v. Kiehl*, 21 Kan. 533 (1879), supports KDR's assertion. Again, the line of cases discussed above clearly shows this court's view that a corporate mortgagee bank has standing to assert the homestead exemption of a mortgagor to protect its mortgage lien. *First Nat'l Bank*, 130 Kan. at 310; *Pitney*, 58 Kan. at 220-221; *Insurance Co.*, 41 Kan. at 136; *Elwell*, 41 Kan. at 132.

Bank of Kansas is challenging the validity and attachment and enforcement of KDR's sales tax liens not to deprive KDR of its liens but to protect the Bank's own mortgage lien. The district court erred in finding that Bank of Kansas lacked standing to challenge KDR's sales tax liens. Bank of Kansas does have standing to challenge the sales tax liens and to assert the homestead exemption in order to protect its own mortgage lien interest in the Davisons' homestead property.

## II. COLLATERAL ESTOPPEL

KDR contends that Bank of Kansas is estopped from collaterally challenging the validity of KDR's sales tax liens.

"Collateral estoppel prevents a second litigation of the same issues between parties or their privies." *In re Estate of Beason*, 248 Kan. 803, 813, 811 P.2d 848 (1991). The requirements of collateral estoppel are:

"(1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment." *Estate of Beason*, 248 Kan. at 813.

See *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988). Collateral estoppel is inapplicable here.

A prior judgment on the merits of KDR's sales tax liens has not been rendered here. The sales tax liens created by KDR do not constitute "judgments". K.S.A. 79-3617 sets forth the procedure for collecting delinquent sales taxes. In part, that statute provides:

"The amount of such warrant so docketed shall thereupon become a lien upon the title to, and interest in, the real property of the taxpayer against whom it is issued. The sheriff shall proceed in the same manner and with the same effect as prescribed by law with respect to executions issued against property upon judgments of a court of record . . . .

"The court in which the warrant is docketed shall have jurisdiction over all subsequent proceedings as *fully as though a judgment had been rendered* in the court. . . . If a warrant is returned, unsatisfied in full, the secretary or the secretary's designee shall have the same remedies to enforce the claim for taxes as *if the state of Kansas had recovered judgment* against the taxpayer for the amount of the tax." (Emphasis added.)

This statute clearly indicates that sales tax liens properly filed are not in fact judgments, but rather are only treated in the same manner as judgments.

The discussion by this court in *Riggan v. Director of Revenue*, 203 Kan. 129, 453 P.2d 52 (1969), is helpful to a clear understanding of the nature of sales tax liens. This court stated, "Prior decisions holding that the filing of a tax warrant for unpaid personal property taxes has the characteristics and attributes of a judgment, and the same force as a judgment, nevertheless, do not fulfill the requirement that the judgment be 'rendered' in a court of record" in order to activate the dormant judgment statute. 203 Kan. at 135. This court therefore held that sales tax liens were not "judgments rendered by a court of record" and thus the dormant judgment statute did not apply to sales tax liens.

There has been no prior litigation concerning KDR's sales tax liens here. The warrants were sent to the Clerk of the District Court of Reno County, but no litigation involving the sales tax liens occurred. The merits of the sales tax liens were never addressed. Again, Bank of Kansas is challenging the validity of

KDR's sales tax liens not to deprive KDR of its liens but to protect the Bank's own mortgage lien. No prior judgment on the merits was rendered here. The doctrine of collateral estoppel is therefore inapplicable.

## III. SALES TAX WARRANTS

The Bank of Kansas contends that KDR failed to follow the proper procedure for filing its sales tax warrants and therefore does not have valid sales tax liens against the Davisons' homestead property.

K.S.A. 79-3617 sets forth the procedure for collecting delinquent sales taxes:

"Whenever any taxpayer liable to pay any sales or compensating tax, refuses or neglects to pay the tax, the amount, including any interest or penalty, shall be collected in the following manner. The secretary of revenue or the secretary's designee shall issue a warrant under the hand of the secretary or the secretary's designee and official seal directed to the sheriff of any county of the state commanding the sheriff to levy upon and sell the real and personal property of the taxpayer found within the sheriff's county to satisfy the tax, including penalty and interest, and the cost of executing the warrant and to return such warrant to the secretary or the secretary's designee and pay to the secretary or the secretary's designee the money collected by virtue thereof not more than 90 days from the date of the warrant. The sheriff shall, within five days, after the receipt of the warrant file with the clerk of the district court of the county a copy thereof, and thereupon the clerk shall either enter in the appearance docket the name of the taxpayer mentioned in the warrant, the amount of the tax or portion of it, interest and penalties for which the warrant is issued and the date such copy is filed and note the taxpayer's name in the general index. No fee shall be charged for either such entry. The amount of such warrant so docketed shall thereupon become a lien upon the title to, and interest in, the real property of the taxpayer against whom it is issued. The sheriff shall proceed in the same manner and with the same effect as prescribed by law with respect to executions issued against property upon judgments of a court of record, and shall be entitled to the same fees for services.

"The court in which the warrant is docketed shall have jurisdiction over all subsequent proceedings as fully as though a judgment had been rendered in the court. A warrant of similar terms, force and effect may be issued by the secretary or the secretary's designee and directed to any officer or employee of the secretary or the secretary's designee, and in the execution thereof such officer or employee shall have all the powers conferred by law upon sheriffs with respect to executions issued against property upon judgments of a court of record and the subsequent proceedings thereunder shall be the same as provided where the warrant is issued directly to the sheriff.

The taxpayer shall have the right to redeem the real estate within a period of 18 months from the date of such sale. If a warrant is returned, unsatisfied in full, the secretary or the secretary's designee shall have the same remedies to enforce the claim for taxes as if the state of Kansas had recovered judgment against the taxpayer for the amount of the tax. No law exempting any goods and chattels, land and tenements from forced sale under execution shall apply to a levy and sale under any of the warrants or upon any execution issued upon any judgment rendered in any action for sales or compensating taxes. The secretary or the secretary's designee shall have the right at any time after a warrant has been returned unsatisfied, or satisfied only in part, to issue alias warrants until the full amount of the tax is collected. No costs incurred by the sheriff or the clerk of the court shall be charged to the secretary or the secretary's designee."

"The methods prescribed for the recovery of delinquent taxes are wholly statutory, no methods exist apart from the statute, and whatever procedures and remedies are available are to be found in the tax statutes." *Riggan,* 203 Kan. 129, Syl. ¶ 2. See *Board of Johnson County Comm'rs v. Roberts,* 231 Kan. 135, 139, 643 P.2d 138 (1982). K.S.A. 79-3617 creates the procedure for obtaining a lien for delinquent sales taxes. "The validity of a lien created by statute depends upon complying with the terms of the statute." *Homestead Land Title Co. v. United States,* 249 Kan. 569, 576, 819 P.2d 660 (1991) (citing *Clark Lumber Co. v. Passig,* 184 Kan. 667, 673, 339 P.2d 280 [1959]).

KDR asserts that the substance of K.S.A. 79-3617 requires only that the tax warrants be ultimately filed with the clerk's office and that the manner or fact of delivery to the sheriff or the clerk is irrelevant. KDR suggests that the legislative intent is that no lien exists until the tax warrants are filed with the clerk (so as to put third parties on notice of the lien), so that KDR benefits from following the language of the statute to protect its interests in a timely manner but is not required to do so. KDR relies on the fact that its tax warrants had been filed with the clerk of the district court some 20 months before Bank of Kansas acquired its mortgage interest in the Davisons' property, so that Bank of Kansas had actual or constructive notice of KDR's superior interest in the property.

Here, KDR's sales tax warrants were not sent directly to the sheriff, and the sheriff never received one of the warrants. The

question is whether K.S.A. 79-3617 requires that the warrants be sent directly by KDR to the sheriff.

" 'Interpretation of statutes is a question of law. The function of the court is to interpret the statutes, giving the statutes the effect intended by the legislature.' [Citation omitted.] . . . 'There is a presumption that the legislature does not intend to enact useless or meaningless legislation.' [Citation omitted.]" *Todd v. Kelly,* 251 Kan. 512, 515, 837 P.2d 381 (1992). "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny,* 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).

"When determining whether a statute is open to construction, or in construing a statute, ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous meaning. . . ."

"It is presumed the legislature understood the meaning of the words it used and intended to use them; that the legislature used the words in their ordinary and common meaning; and that the legislature intended a different meaning when it used different language in the same connection in different parts of a statute." *Boatright v. Kansas Racing Comm'n,* 251 Kan. 240, Syl. ¶¶ 7, 8, 834 P.2d 368 (1992).

However, "where a statute is susceptible of more than one construction, it must be given that construction which, when considered in its entirety, gives expression to its intent and purposes, even though such construction is not within the strict literal interpretation of the statute." *Jackson v. City of Kansas City,* 235 Kan. 278, 318, 680 P.2d 877 (1984). This rule, however, "does not permit a disregard of manifest legislative intention appearing from plain and unambiguous language." *J. G. Masonry, Inc. v. Department of Revenue,* 235 Kan. 497, 500, 680 P.2d 291 (1984).

The first paragraph of K.S.A. 79-3617 contains directory language:

"[The tax] *shall* be collected in the following manner. The secretary of revenue . . . *shall* issue a warrant . . . directed to the sheriff . . . commanding the sheriff to levy upon and sell the real and personal property of the taxpayer . . . and to return such warrant to the secretary . . . and pay . . . the money collected by *virtue* thereof not more than 90 days from the date of the warrant. The sheriff *shall,* within five days, after the receipt of the warrant file with the clerk of the district court . . . a copy thereof . . . ." (Emphasis added.)

By using the word "shall," the legislature normally requires strict compliance with these steps. See *Northern Natural Gas Co. v. Williams,* 208 Kan. 407, 418, 493 P.2d 568, *cert. denied* 406 U.S. 967 (1972).

However, K.S.A. 1992 Supp. 79-2101, concerning collection of delinquent personal property taxes, provides in part that "the county treasurer shall issue a warrant signed by the treasurer directed to the sheriff of the county, commanding the sheriff to levy . . . . Such *warrant shall be delivered to the sheriff."* (Emphasis added.) K.S.A. 79-3617 has no similar provision that the warrant "shall be delivered to the sheriff." Thus, the legislature demonstrates its use of language when it wants to make clear delivery to the sheriff is mandatory.

The purpose of filing the warrant in the office of the clerk of the district court is to give notice of the tax lien. How it gets there does not seem important. K.S.A. 79-3617 does not set forth the method of delivery. Here, KDR's sales tax warrants were filed in the proper place and gave notice to the public that the liens existed. We hold that a sales tax warrant filed with the clerk of the district court creates a valid lien pursuant to K.S.A. 79-3617 even though it is not delivered to the sheriff prior to filing with the clerk of the court

### IV. HOMESTEAD ISSUE

Bank of Kansas next contends that even if KDR has valid sales tax liens on the Davisons' property, the liens cannot attach to or be enforced against the Davisons' property because it is their homestead.

Article 15, § 9 of the Kansas Constitution states:

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: *Provided,* The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife . . . ."

In *Homestead*, 249 Kan. 569, Syl., we specifically held on a question certified by the United States District Court for the District of Kansas that "the sales tax lien does attach to real property which is subject to a claim of homestead exemption under Article 15, § 9 of the Kansas Constitution." There, a sales tax lien filed against a wife attached to her interest in homestead property held with her husband, and when the husband and wife voluntarily sold the homestead, her portion of the proceeds was seized to satisfy the sales tax lien.

Bank of Kansas relies on *Morris v. Ward*, 5 Kan. 239 (1869), and suggests that Homestead was improperly decided and should be overruled. In *Morris*, this court held that "no incumbrance or lien or interest can ever attach to or affect the homestead, except the ones specifically mentioned in the constitution." 5 Kan. at 244. See *State, ex rel., v. Mitchell*, 194 Kan. 463, Syl. ¶ 5, 399 P.2d 556 (1965); *Coughlin v. Coughlin*, 26 Kan. 116, 118 (1881).

We believe our holding in *Homestead* to be sound and decline to change or reconsider the holding that sales tax liens do attach to property which is subject to a claim of homestead exemption.

We note the Kansas Title Standards have long warned that a sales tax warrant creates a lien on a homestead (citing K.S.A. 79-3235 and K.S.A. 79-3617). Kansas Title Standards Handbook § 13.8 (5th ed. 1990).

The Bank of Kansas next contends that even if sales tax liens attach to homestead property, the Homestead Exemption protects the Davisons' property from forced sale because the exception in the Homestead Act for "sale for taxes" only applies to taxes related to the homestead property itself.

We did not address whether sales tax liens can be enforced against homestead property in *Homestead*. We distinguished the attachment of sales tax liens to homestead property from the ability to force a sale of homestead property and noted there that no forced sale of the homestead property had occurred.

"If this case involved an attempt to foreclose on the property due to taxes owed by the taxpayers, then it would be necessary to decide whether the provision of the Homestead Exemption allowing a forced sale of the property 'for taxes' should be interpreted to involve only taxes that arise from the

land in issue. This case, however, does not involve a forced sale." *Homestead,* 249 Kan. at 574.

.Neither has a forced sale occurred here. Bank of Kansas has foreclosed on the Davisons' homestead property by virtue of its mortgage. Upon sale of the homestead to satisfy the Bank's foreclosure, the proceeds can be used to satisfy KDR's first and prior liens. It was not necessary for KDR to force a sale of the homestead property because Bank of Kansas had already done so.

Both parties here extensively discuss the enactment of the Homestead Exemption as it is recorded in the Wyandotte Constitutional Convention. KDR asserts that the framers of the Kansas Constitution could have limited the exception for "sale for taxes" to taxes related to the homestead property but chose not to. Indeed, the homestead exemption in the Texas Constitution limits the exception for taxes to the "taxes due thereon." Tex. Const. art. 16, § 50. Conversely, Bank of Kansas relies on *United States v. Hershberger,* 475 F.2d 677 (10th Cir. 1973), and contends that the sales tax was nonexistent at the time the Homestead Exemption was enacted and therefore could not have been contemplated as falling within the scope of "taxes" as that term was used by the framers in the Homestead Exemption.

We hold that sales taxes are within the definition of "taxes" as that word is used in the Homestead Exemption. "[T]he power to levy taxes is inherent in the power to govern but the exercise of that power is dependent upon the existence of legislation designating the kinds of property to be taxed. The authority to impose taxes rests upon legislation." *Robbins-Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co.,* 229 Kan. 511, 512, 625 P.2d 494 (1981).

"A constitution must be interpreted liberally to carry into effect the principles of government which it embodies. It deals broadly with general subjects, and its language should not be interpreted in any narrow, refined or subtle sense, but should be held to mean what the words imply to the common understanding of men." *State v. Sessions,* 84 Kan. 856, Syl. ¶ 1, 115 Pac. 641 (1911).

The term "taxes" as used in the Homestead Exemption must be interpreted in its common meaning. "Tax" is defined as "[a] pecuniary burden laid upon individuals or property to support the government, and is a payment exacted by legislative authority."

Black's Law Dictionary 1457 (6th ed. 1990). Webster's Third New International Dictionary 2345 (1976) defines "tax" as "a usually pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes."

The Homestead Exemption in the Kansas Constitution does not limit the exception for "sale for taxes" to taxes related to the homestead property, as is asserted by Bank of Kansas and as was held by the Tenth Circuit in *Hershberger*. In *Homestead,* we clearly placed the sales tax lienholder above the status of a general lien creditor. When the State of Kansas, through its Department of Revenue, obtains valid sales tax liens by virtue of the legislature's exercise of the power to tax, the liens attach to the taxpayer's property regardless of whether it is subject to a claim of homestead exemption. The rights possessed by the State of Kansas as a sales tax lienholder include the right to force a sale to satisfy the lien. KDR has the right to force a sale of the Davisons' homestead property to satisfy its valid sales tax liens.

While we disagree in part with the reasons the trial court expressed for its decision, we agree with the result reached. A trial court decision which reaches the right result will be upheld, even though the trial court may have relied upon the wrong ground or assigned erroneous reasons for its decision. *Admire Bank & Trust v. City of Emporia,* 250 Kan. 688, Syl. ¶ 2, 829 P.2d 578 (1992).

Affirmed.