**STATE of Indiana ex rel. INDIANA DEPARTMENT OF REVENUE, Appellant–Plaintiff,**

v.

**Timothy L. DEATON and Marie E. Deaton, Appellees–Defendants.**

No. 73A01–0002–CV–49.

Court of Appeals of Indiana.

Nov. 22, 2000.

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Kurt St. Angelo, Indianapolis, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge

The Indiana Department of Revenue (the Department) appeals the dismissal of its verified motion for proceedings supplemental by the small claims division of the Shelby Superior Court. The Department filed the motion to collect a judgment lien for state income taxes owed by Timothy L. Deaton and Marie E. Deaton (the Deatons). As restated, the Department presents the following issue: Whether an income tax warrant entered on the clerk's judgment record is the equivalent of a judgment that entitles the Department of Revenue to resort immediately to proceedings supplemental in a court of general jurisdiction.

We affirm.

### Facts and Procedural History

The underlying facts are not well developed in the Record of Proceeding, but are undisputed. The Deatons filed a state income tax return that did not include payment of the taxes due. The Department, through administrative proceedings, established the amount of taxes and penalties owed by the Deatons. After the Deatons' initial protest of the assessment, they did not pursue an appeal in accordance with the applicable statutes. When the Deatons failed to pay the taxes after the Department issued demand notices, a tax warrant was issued. The Department filed the tax warrant with the Shelby Circuit and Superior Court Clerk. The tax warrant was entered into the clerk's docket as a judgment lien.

On January 28, 1999, the Department instituted proceedings supplemental in the small claims division of the Shelby Superior Court. The Department's motion stated that it owned a "judgment" against the Deatons. R. at 10. The Deatons, by special appearance, filed a verified motion to dismiss on February 25. The motion to dismiss alleged, among other things, that the Shelby Superior Court did not have personal jurisdiction over them because the Department had not filed a complaint and obtained a judgment from that court. On March 1, the Department moved to amend its motion for proceedings supplemental to state that it owned a "judgment lien" rather than a judgment. R. at 28.

A hearing on all pending motions was held on June 29. The Deatons reiterated at the hearing that the Department had not filed a complaint in Shelby Superior Court, had not obtained a judgment from that court, and therefore lacked personal jurisdiction to pursue proceedings supplemental over them in that court. On December 17, 1999, the small claims court made a Chronological Case Summary (CCS) entry granting the Deatons' motion to dismiss the Department's motion for proceedings supplemental. The Department appeals that ruling, a legal question which we review de novo.

### The Administrative Tax Procedures

When the Department issues an assessment, the taxpayer may protest that assessment. Ind.Code § 6–8.1–5–1 (1998). If the Department denies the protest and issues a letter of finding, the taxpayer must pursue further review by requesting a rehearing or by pursuing an appeal of the decision to the Tax Court. *Id.* § 6–8.1–5–1(e–h); *see also State v. Sproles*, 672 N.E.2d 1353 (Ind.1996) (observing that taxpayers must seek administrative remedies and then pursue judicial review only in the Tax Court). The failure to pursue appellate measures through the Tax Court conclusively establishes the amount of taxes owed. *Id.* §§ 6–8.1–5–1(i–j) & 33–3–5–

11(a); Ind. Admin. Code tit. 45, r.15–5–6 (1996).

The Department then issues a demand notice. Ind.Code § 6–8.1–8–2(a). If the amount is still not paid, the Department's next step is to issue a tax warrant. *Id.* § 6–8.1–8–2(b). After a prescribed period, the Department may file the tax warrant with the circuit court clerk of any county in which the person owns property. *Id.* § 6–8.1–8–2(c–d). The statute further provides:

> (d) When the circuit court clerk receives a tax warrant from the department or the sheriff, the clerk shall record the warrant by making an entry in the judgment debtor's column of the judgment record, listing the following:
>
> (1) The name of the person owing the tax.
>
> (2) The amount of the tax, interest, penalties, collection fee, sheriff's costs, clerk's costs, and fees established under section 4(b) of this chapter when applicable.
>
> (3) The date the warrant was filed with the clerk.
>
> (e) When the entry is made, the total amount of the tax warrant becomes a judgment lien against the person owing the tax. The judgment lien for taxes attaches to all the person's interest in any:
>
> (1) chose in action in the county; and
>
> (2) real or personal property in the county;
>
> excepting only negotiable instruments not yet due.

*Id.* § 6–8.1–8–2. This administrative framework allows protest of the amounts assessed and provides for judicial review.

### Judgment Lien Versus Judgment

■ The Department contends that the tax warrant judgment lien is the equivalent of a judgment such that it may resort immediately to proceedings supplemental. The Deatons maintain that because the Department did not file a complaint and obtain a judgment from the Shelby Superior Court, that court does not have personal jurisdiction over them for proceedings supplemental. By filing a timely motion to dismiss, the Deatons preserved their challenge to the Shelby Superior Court's personal jurisdiction over them. *See generally Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1231 (Ind.2000).

■ Proceedings supplemental are supplemental to execution on the judgment of a specific court. Ind. Trial Rule 69(E) ("proceedings supplemental to execution may be enforced by verified motion or with affidavits *in the court where the judgment is rendered . . . .*") (emphasis added); *Stocker v. Cataldi,* 521 N.E.2d 716, 718 (Ind.Ct.App.1988) (holding that the Lake Superior Court properly dismissed a complaint for proceedings supplemental because judgment was rendered in the Porter Superior Court). They are "a continuation of an underlying claim" and thus are "a nullity absent a valid judgment." *Washburn v. Tippecanoe County Office of Family and Children,* 726 N.E.2d 361, 363 (Ind.Ct.App.2000).

■ A judgment is the result of a "court" proceeding.[1] A judgment lien is a

---

1. Judgment is defined as:

The official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination. The final decision of the court resolving the dispute and determining the rights and obligations of the parties. The law's last word in a judicial controversy, it being the final determination by a court of the rights of the parties upon matters submitted to it in an action or proceeding. Conclusion of law

upon facts found or admitted by the parties or upon their default in the course of the suit. Decision or sentence of the law, given by a court of justice or other competent tribunal, as the result of proceedings instituted therein. . . . Decision or sentence of the law pronounced by the court and entered upon its docket, minutes or record. Determination of a court of competent jurisdiction upon matters submitted to it. Determination or sentence of the law, pronounced by a competent judge or court, as the result of an action or

lien, not a judgment. The Department cannot magically turn its administrative determination into the judgment of a court of general jurisdiction just because the poorly chosen term "judgment lien" is found within the statute. The most important reason for this limitation is the stark difference between the minimal service of process required for the Department's administrative procedures and that required by constitutional due process in a court of general jurisdiction.

In tax collection administrative proceedings, service of process on the taxpayer can begin and end with a notice to the taxpayer issued only by *first class mail.* Ind.Code §§ 6–8.1–3–11 & 6–8.1–5–1. After no response from the taxpayer (which may well be due to non-receipt of the first class mail notice), the Department need only send out its subsequent findings and demand notice to the taxpayer by first class mail. A taxpayer who did not receive the Department's initial first class mail notice is quite likely not to receive subsequent first class mailings, either. Under the Department's rationale, a taxpayer's first notice of an alleged deficiency might well be a personally served subpoena in proceedings supplemental in a court of general jurisdiction commanding appearance on pain of contempt.

■ In contrast, a court of general jurisdiction must obtain personal jurisdiction over a defendant through one of many Trial Rule 4 methods reasonably calculated to result in actual notice to that defendant. Only then do subsequent dispositive acts by the court become binding upon the defendant. While service of orders in proceedings supplemental can be properly obtained upon a judgment debtor through first class mail under Trial Rule 5, such service is predicated on initial service of the underlying action pursuant to Trial Rule 4.

The Department correctly points to a number of administrative income tax collection remedies available to it "without judicial proceedings." Ind.Code § 6–8.1–8–8 (1998). These remedies include seizure of bank accounts, garnishment of earnings, and direct levy against property. *Id.* In addition to these administrative remedies, the Department may apply to a court of general jurisdiction for a restraining order preventing the taxpayer from conducting business in Indiana, *id.* § 6–8.1–8–5, or for appointment of a receiver, *id.* § 6–8.1–8–6. Although the Department correctly asserts that these statutes do not exclude proceedings supplemental, this assertion misses the point. The Department is clearly limited in the actions it may take "without judicial proceedings." Proceedings supplemental are not one of the three excepted actions, and with good reason.

■ A proceeding supplemental to execution on a judgment is an extraordinary, equitable remedy that allows a creditor to force a debtor to submit to interrogation under oath to discover assets and other interests not subject to levy and sale at law. *Stuard v. Jackson & Wickliff Auctioneers, Inc.,* 670 N.E.2d 953, 955 (Ind.Ct. App.1996); T.R. 69(E). Conversely, the Department's "judgment lien" is purely a creature of law, distinct from and weaker than a judgment from a court of general jurisdiction in both law and equity. The Department admitted as much when it sought to amend its motion for proceedings supplemental to recite that it held only a judgment lien and not the judgment required by Trial Rule 69(E) and Indiana Code §§ 34–55–1–1, *et seq.* and 34–55–8–1, *et seq.*[2]

proceeding instituted in such court, affirming that, upon the matters submitted for its decision, a legal duty or liability does or does not exist.
*Black's Law Dictionary* 841–42 (6th ed.1990) (citations omitted).

**2.** We reject the Department's reliance on *Bryant v. State,* 660 N.E.2d 290 (Ind.1995), a case dealing with the criminal double jeopardy implications of payment of the controlled substance excise tax. Although the court refers to the tax assessment as a "judgment," it

Finally, the Department points out that the amount of the Deatons' tax liability has been conclusively established by their failure to follow through with their administrative appeal or an appeal to the Tax Court. It suggests that requiring the commencement of a new civil action in a court of general jurisdiction serves no purpose.

■ Clearly, a trial court of general jurisdiction does not have the authority to hear the merits of whether or not a tax is actually owed or the amount of the tax. *See generally State v. Sproles*, 672 N.E.2d 1353, 1356–57 (Ind.1996) (discussing the jurisdiction of the Tax Court). Nevertheless, in view of the administrative procedure that can create a "judgment lien," requiring that a civil action be commenced and proceed to judgment in order to foreclose that lien before the institution of proceedings supplemental is a fundamental safeguard of constitutional due process.

Our decision today should come as no surprise. Over a decade ago, this court expressed skepticism about the propriety of using proceedings supplemental in a case in which the Department filed judgment liens against a taxpayer. *Emley v. Indiana Dep't of State Revenue*, 536 N.E.2d 558, 563 (Ind.Ct.App.1989) ("Although we have reservations about the appropriateness of the Department's use of proceedings supplemental in this case, our review is limited by the posture of the case as decided below and as it reaches us on appeal.") More recently, this court held that a creditor who owned a judgment rendered by the United States Bankruptcy Court for the Southern District of Indiana could not enforce that judgment through proceedings supplemental in an Indiana state court of general jurisdiction without first domesticating the judgment. *Borgman v. Aikens*, 681 N.E.2d 213, 217–18 (Ind.Ct.App.1997). If proceedings supplemental are not available to the owner of a true judgment from a federal court sitting in Indiana until that judgment is domesti-

is in an entirely different, criminal, constitu-

cated, proceedings supplemental surely cannot be available to the Department with its judgment lien sprung from an administrative process that never reached any court, unless and until the Department files suit and obtains a judgment foreclosing its lien in an Indiana court of general jurisdiction.

For all of these reasons, the trial court's dismissal of the Department's motion for proceedings supplemental is affirmed.

Affirmed.

NAJAM, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting

I believe the Shelby Superior Court lacked jurisdiction to grant any relief to taxpayers. I therefore respectfully dissent. The Deatons filed an income tax return that did not include payment of the taxes due. The Department, through administrative proceedings, established the amount of taxes and penalties owed by the Deatons. After the Deatons' initial protest of the assessment, they made no attempt to pursue judicial remedies in accordance with the applicable statutes. The statutes require exhaustion of administrative remedies. Judicial review on any theory arising under the tax statutes is available only through the Indiana Tax Court. *State v. Sproles*, 672 N.E.2d 1353 (Ind.1996).

In *Sproles*, the court addressed the question whether a taxpayer could bring a claim regarding the constitutionality of a tax in a court of general jurisdiction. The court held that a taxpayer must invoke the statutory administrative remedies and then pursue judicial review only through the Indiana Tax Court. *Id.*

The taxpayer in *Sproles* was assessed a tax. The taxpayer protested the tax pursuant to I.C. § 6–8.1–5–1 (1993). The taxpayer did not receive a hearing on his

tional context that has no relevance here.

protest, but the Department recorded a judgment lien against the taxpayer "which clouded title to all of [the taxpayer's] real estate interests." *Id.* at 1355. The taxpayer's co-tenants in common filed actions in Lawrence Circuit Court to partition the properties. The taxpayer filed a cross-claim against the Department seeking declaratory relief based upon alleged state and federal constitutional violations resulting from imposition of the tax. The Lawrence Circuit Court issued a declaratory judgment that the tax, as applied to the taxpayer, violated the United States Constitution.

The court addressed the matter in the context of subject-matter jurisdiction. The court explained:

> "Indiana courts have only such jurisdiction as is granted to them by our Constitution and statutes." *Carpenter v. State*, 266 Ind. 98, 360 N.E.2d 839, 841 (1977). Circuit courts have original jurisdiction in all civil cases "except where exclusive jurisdiction is conferred by law upon other courts of the same territorial jurisdiction." IND.CODE § 33–4–4–3(a) (1993). The Tax Court's territorial jurisdiction over tax protests and appeals is statewide. IND.CODE § 33–3–5–2 (1993). Accordingly, if the Tax Court's jurisdiction over such claims is exclusive, then the Lawrence Circuit Court had no authority to entertain Sproles' declaratory relief action unless taxpayers may bypass available administrative remedies altogether.

*Id.* at 1356. The court explained the statutory framework that confers jurisdiction on the Tax Court and provides for administrative procedures that must be followed by a taxpayer challenging a matter arising under that framework:

> In an effort to channel tax disputes to a specialized tribunal, the Indiana Legislature created the Tax Court in 1986. *See* IND.CODE §§ 33–3–5–1 to 33–3–5–20 (1993 & Supp.1996). The Tax Court's enabling statute declares that the Tax Court "has exclusive jurisdiction over

any case that arises under the tax laws of this state and that is an initial appeal of a final determination" of the Department or Board of Tax Commissioners. IND.CODE § 33–3–5–2(a) (1993). Therefore, if two prerequisites are met, the Tax Court has exclusive jurisdiction. First, the case must "arise under" the tax laws. * * *

As commentators and the Tax Court itself have noted, the policy underlying creation of the Tax Court was to consolidate tax-related litigation in one court of expertise. This legislative purpose dictates a broader construction of the Tax Court's enabling statute than we would reach under federal guidelines. We believe the Legislature intended that all challenges to the tax laws—regardless of the legal theory relied on—be tried in the Tax Court. Accordingly, we hold that for purposes of § 33–3–5–2 a case "arises under" the tax laws if: 1) an Indiana tax statute creates the right of action; or 2) the case principally involves collection of a tax or defenses to that collection. * * *

In addition to the "arise under" test, the exclusive jurisdiction of the Tax Court under IND.CODE § 33–3–5–2(a) has a second requirement. To be governed by that section, the original tax appeal must also be from the Department's "final determination" that the listed tax is owed. A taxpayer receives a final determination in one of two ways. The taxpayer can pay the tax, request a refund, and sue in the Tax Court if the request is denied. IND.CODE § 6–8.1–9–1 (1993). Alternatively, the taxpayer can protest the listed tax at the assessment stage and appeal to the Tax Court from a letter of findings denying the protest. IND.CODE § 6–8.1–5–1 (1993). Both remedies may be pursued simultaneously. IND.CODE § 6–8.1–9–1(c)(1993). * * *

In addition to administrative relief that is ultimately reviewable by the Tax Court, taxpayers who have initiated an

appeal can now seek an injunction in the Tax Court to enjoin collection of the listed tax pending the outcome of the original tax appeal. IND.CODE § 6–8.1–9–1(d)(1993); *see also* IND.CODE § 33–3–5–11 (1993).

*Id.* at 1356–57 (footnotes omitted); *see also State Board of Tax Comm'rs v. Montgomery*, 730 N.E.2d 680 (Ind.2000) (Tax Court did not have jurisdiction to judicially review proceedings before the taxpayer exhausted administrative remedies); *Owner Operator Independent Drivers Ass'n v. State, Dep't of Revenue*, 725 N.E.2d 891 (Ind.Ct.App.2000) (taxpayers requesting relief from fuel tax assessment were required to exhaust administrative remedies), trans. denied; *Common Council of City of Hammond v. Matonovich*, 691 N.E.2d 1326 (Ind.Ct.App.1998) (a taxpayer challenge to the legality of a property tax assessment requires pursuit of available administrative remedies, and after a final determination, the taxpayer may pursue judicial review through the Indiana Tax Court), trans. denied. The action here is principally for the collection of taxes or defenses to that collection, and involves a final determination that the taxes are owed. Judicial review resides exclusively with the Indiana Tax Court.

Accordingly, the Small Claims Division of the Shelby Superior Court was without jurisdiction to act except as specifically provided by statute. The Deatons were required to exhaust their administrative remedies and pursue any judicial review only through the Indiana Tax Court. *Cf. Warrick County v. Weber*, 714 N.E.2d 685 (Ind.Ct.App.1999) (county court did not have subject-matter jurisdiction to act in a tax matter, beyond the action specified by statute, because the Indiana Tax Court has exclusive jurisdiction over judicial review of tax matters). The tax statutes allow the Department to record judgment liens in county circuit courts thereby conferring jurisdiction upon those courts for the limited purpose of collecting the judgment liens.

The failure to pursue appellate measures through the tax court conclusively establishes the amount of taxes owed. *See* IC § 6–8 .1–5–1(i); *Emley v. Indiana Dep't of State Revenue*, 536 N.E.2d 558 (Ind.Ct. App.1989) (the failure to respond to notices of assessments or challenge their validity precluded taxpayer from contesting the delinquency in later proceedings supplemental). When the Deatons failed to pay the taxes after the Department issued demand notices, a tax warrant was issued. The Department filed the tax warrant with the Shelby County Circuit Court Clerk. The tax warrant was entered into the clerk's docket as a judgment lien and the Department instituted proceedings supplemental to collect the judgment lien.

Support for the proposition that the statutory framework provides ample notice and opportunity for judicial review is found in *Emley v. Indiana Dep't of State Revenue*, 536 N.E.2d 558.

It has uniformly been held that states may, in the area of taxation, adopt procedures which are summary in character and that notice of such proceedings may be indirect, provided that the period of notice of the initiation of proceedings and the method of giving it are reasonably adapted to the nature of the proceedings and their subject matter, and afford the property owner a reasonable opportunity at some stage of the proceedings to contest an arbitrary or unjust assessment. As a general proposition, all persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them. This rule is especially true in the area of taxation, because such statutes are universally in force and are general in their application, facts which a land owner must take into account when safeguarding his interest in property.

This is not to suggest however that in adjudicatory proceedings, the Department is relieved of its obligation to provide notice reasonably calculated, under

all the circumstances, to apprise an interested party of the pendency of proceedings and to afford an opportunity to object. Presumably, Emley is arguing that the notice he received did not meet these minimal prerequisites because it did not advise him of the ultimate consequences of his failure to respond.

As a factual matter, we observe that Emley received a series of nineteen second notices. Each advised that notice was being issued pursuant to statute and if payment was not remitted within ten days, the retail merchant would "be subject to additional penalties and [the] account ... forwarded to the sheriff ... for the issuance of a warrant and collection of the amount due." Since these notices alerted Emley to the fact that collection would commence, the question becomes whether, beyond this advisement, it is reasonable to hold Emley to the presumption of knowledge of the legislative enactment's penalties and remedies.

We see no reason why when notified that collection would commence, Emley should not be expected to take the initiative and determine the ultimate consequences of his actions. This is not a situation involving wholly passive conduct, ... but one involving a failure to act under circumstances which should have alerted the individual to the need for a heightened awareness. And, after all, Emley is not just a property owner but a businessman whom society rightly expects to pay greater attentiveness to regulatory obligations involving the conduct of his business affairs.

Furthermore, the notice provided Emley need do no more than rationally accommodate the State's interests in the orderly, timely and efficient collection of taxes with Emley's interest in a fair determination. A notice which advises that a judgment lien may be acquired does nothing more to minimize the risk of an unfair or mistaken deprivation of property than one which warns that col-

lection will commence. Since Emley has not shown the efficacy of the additional advisements he seeks, and a revision of the notice will necessitate the expenditure of additional time and money at the expense of other taxpayers, the balance weighs in favor of the State. We conclude that the notice issued by the Department need not set forth the possible consequences of a retail merchant's failure to remit sales taxes in order to comport with the due process clause. Notice of the pendency of proceedings to collect the taxes and an opportunity to be heard before obtaining the lien is sufficient.

*Id.* at 562 (citations omitted).

The Deatons acknowledge that the Department could have proceeded from the judgment lien to an administrative levy and could have taken property owned by the Deatons. *See* Ind.Code Ann. § 6–8.1–8–3 (West 2000); *see also* IC § 6–8.1–5–3 (allowing the Department a jeopardy tax warrant and the immediate levy upon property if the "person owing taxes intends to quickly leave the state, remove his property from the state, conceal his property in the state, or do any other act that would jeopardize the collection of those taxes ...."). The Deatons contend that the judgment lien does not allow the Department to commence proceedings supplemental to examine them regarding the availability of property or assets to satisfy the lien. *See* Ind. Trial Rule 69(E) (in proceedings supplemental the defendants may be ordered to answer as to existence of non-exempt property to satisfy a judgment).

The Deatons urge that a judgment lien is not synonymous with a judgment. The essence of the Deatons' request for dismissal is that proceedings supplemental may not be used to commence judicial proceedings. The tax statutes, however, provide the Department with the means to establish a judgment lien, have the lien recorded in a county court without previous judicial proceedings, and then enforce

the judgment lien. *See* IC §§ 6–8.1–8–2 and 6–8.1–8–4.

The Department may collect the judgment liens "in the same manner that any debt due the state is collected...." IC § 6–8.1–8–4. Further, "[t]he remedies for tax collection provided to the department under this chapter are cumulative and the selection or use of one (1) of the remedies does not preclude the subsequent or corresponding use of one (1) or more of the other remedies." IC § 6–8.1–8–7.

The definitions of "judgment" and "judgment lien" help to clarify whether a judgment lien will support the institution of proceedings supplemental. The definition of "judgment" includes: "An award may be in the nature of, or equivalent of, a judgment. Also, an order may be a judgment." BLACK'S LAW DICTIONARY 841–42 (6th ed.1990) (citations omitted). The definition encompasses administrative decisions. "Judgment lien" is defined as:

> An encumbrance that arises by law when a judgment for the recovery of money is docketed and that attaches to the debtor's real estate located in the court where the judgment is docketed. A lien binding the real estate of a judgment debtor, in favor of the holder of the judgment, and giving the latter a right to levy on the property for the satisfaction of his judgment to the exclusion of other adverse interests subsequent to the judgment. Right to subject property of judgment debtor to satisfaction of judgment. A charge on or attachment of property of one who owes a debt and is subject to a judgment thereon.

BLACK'S LAW DICTIONARY 845 (6th ed.1990) (citations omitted). A judgment lien presumes the existence of a judgment that is docketed. The judgment lien is merely the next step in enforcing a judgment and presumes the existence of the judgment.

Implicitly, the income tax assessment and collection statutes establish that the administrative procedures, allowing protest to the Department and appeal to the tax court, result in a judgment after the time periods have expired and the necessary procedures have been followed. The tax judgment liens are recorded "in the judgment debtor's column of the judgment record...." IC § 6–8.1–8–2(d).[3] Thus, the statutory framework establishes a judgment when the tax warrant is recorded as a judgment lien in the court's judgment record. The judgment lien recorded by the circuit court clerk serves the same purpose as a judicial judgment. *Cf. Bank of Kansas v. Davison,* 253 Kan. 780, 861 P.2d 806 (1993) (a tax judgment lien is not a judgment for collateral estoppel purposes but is treated as a judgment).

The Department then can collect the judgment liens in any manner in which the State collects other debts. IC § 6–8.1–8–4. Once the judgment is established in the county where the tax warrant is sent, the Department may use proceedings supplemental and any other means available to the State to collect the debt.

I would reverse the judgment and remand for proceedings consistent with the tax statutes.

---

**3.** IC § 6–8.1–8–2(c) provides the Department with authority to record tax warrants, which become judgment liens, with the circuit court clerk of any county where the debtor owns property. Proceedings supplemental must be pursued in the county in which the original judgment was obtained. *See Borgman v. Aikens,* 681 N.E.2d 213 (Ind.Ct.App.1997) (federal court judgment had to be domesticated in county in which creditor sought to use proceedings supplemental to collect the judgment), trans. denied. Because the judgment originates with the Department or the tax court, the circuit court clerk's docket entry provides the basis for the origin of the proceedings in a particular county.