No. 28,902.

THE FIRST NATIONAL BANK OF GARDEN CITY, *Appellee,* v. JAMES C. TYLER et al., *Appellants.*

(286 Pac. 400.)

Opinion filed April 5, 1930.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt* and *Virgil V. Scholes,* all of Topeka, for the appellants.

*C. E. Vance,* of Garden City, for appellee; *H. O. Trinkle, Edgar Foster* and *Horace J. Foster,* all of Garden City, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the First National Bank of Garden City against James C. Tyler and other defendants, including G. W. Haflick and Elizabeth Haflick, the appealing defendants, to foreclose a mortgage given on January 29, 1921, by James C. Tyler and his wife to W. B. George to secure an indebtedness of $24,396.39, and the mortgage was assigned by George to the plaintiff bank on January 28, 1922. Other liens existed against the mortgaged land, one of which was a first mortgage, not contested here, and the other was a certain judgment lien. A decree of foreclosure in favor of plaintiff was entered and defendants appeal, claiming that a sale under a judgment lien cut off the plaintiff's mortgage.

It appears that prior to the execution of the George mortgage, and on April 3, 1920, an action was brought by J. W. Gray against

J. C. Tyler, the then owner of the mortgaged land, who with his family occupied it as his homestead, upon a promissory note which resulted in a judgment in favor of Gray for $760 with accrued interest. That judgment was rendered on February 19, 1921, and in the meantime, on January 29, 1921, the George mortgage was executed by Tyler and his wife. The Gray judgment was entered on one of the days of the December term of court which began on December 6, 1920, and under the statute it became a lien on the land on that date, more than a month before the execution of the George mortgage. On May 9, 1921, an execution was issued and levied upon the mortgaged land, about 1,700 acres, all of which was sold to J. W. Gray, the judgment creditor, on June 14, 1921, for $804, subject to the first mortgage. That sale was confirmed on June 18, 1921. The land, it appears, was conveyed by Tyler to L. E. Chase on February 4, 1922, and he redeemed the land from Gray, the purchaser, at the execution sale on April 6, 1922. Chase deeded the land to the appellants, G. W. Haflick and Elizabeth Haflick, on June 29, 1922. To the claim of appellants that under the operation of R. S. 60-3460 the sale and redemption by the owner cut off the plaintiff's mortgage the plaintiff pleaded and contended, among other things, that the redemption by the owner or his grantee did not cut off an inferior lien where the holder of the inferior lien was not a party in the action.

Another contention was that the execution sale under the Gray judgment was void because the land was occupied by the owner as his homestead when the mortgage was executed. The sheriff sold the entire tract without setting off the homestead of the owner. No selection was made by Tyler, who had conveyed the tract to his grantee prior to the time of the sale, and none was made by the sheriff or by anyone else.

Taking up the homestead feature of the case, we have the question, How does the failure to make a selection and the failure of the officer to set apart a homestead affect the sale of the entire tract? Tyler occupied a part of the tract as his home and near to it he had a barn, two windmills, a chicken house and a granary, all within a compass of about an acre in a corner of a certain quarter section of the tract, with a fence around the improvements. He had land north, south and east of his home and farmed clear across three of the quarter sections without regard to their boundaries.

Without question he had a homestead exemption on 160 acres of the tract contiguous to his home when the mortgage was executed, which, as we have seen, covered the entire tract. The constitution and statutory homestead right gives to the owner not only the right to occupy the homestead but also the right to sell or mortgage it and to give a purchaser or a mortgagee a valid title or a valid lien, and that right is available to the purchaser or the mortgagee, for the protection of his own right or title. In *Elwell v. Hitchcock*, 41 Kan. 130, 21 Pac. 109, where the question was involved, it was said:

"Of course it is true that the right to claim the benefit of the exemption law is a personal privilege, but after the owner of a homestead has sold the same the purchaser has a right, for the purpose of establishing his own title, to show that at the date of his purchase the land was a homestead, and therefore not subject to a judgment lien or forced sale. He does this, not for the benefit of his grantor, but for the protection of his own right and title. If a purchaser of land could not do this, then it would be unsafe to purchase any homestead or other exempt property. If the land was a homestead **at** the time Nohrenhold purchased, then the judgment of Elwell was no lien or encumbrance." (p.132.)

See, also, *Insurance Co. v. Nichols*, 41 Kan. 133, 21 Pac. 111; *Gas Co. v. Land Co.*, 54 Kan. 533, 38 Pac. 790. Under the homestead provisions of our constitution, article 15, section 9, and the statutory provision R. S. 22-102, a judgment does not attach to or become a lien upon the homestead, and although a homestead may be later abandoned the sale of the homestead under a judgment is absolutely void. (*Morris v. Ward*, 5 Kan. 239; *Hickson v. George*, 18 Kan. 253; *Elwell v. Hitchcock*, supra; *Pitney v. Eldridge*, 58 Kan. 215, 48 Pac. 854; *Brewer v. Warner*, 105 Kan. 168, 182 Pac. 411.)

Nothing done by the sheriff could make a judgment a lien on the homestead. Only the owner and his wife can create a lien. In the Brewer case, where it was claimed that a confirmation of the sale of a homestead under a general execution issued upon a judgment precluded a party from questioning the validity of the sale, that claim was overruled and the court, among other things, said:

"The principle just discussed applies when exempt property is sold. The sheriff suffers from a defect of power. He has no more authority to seize and sell property of the judgment debtor which is exempt than he has to seize and sell property of a stranger. He cannot create a lien, to be adjudicated by confirmation, by simply seizing and selling land withdrawn by law from the scope of his official activity."

As the owner of the homestead owned a greater quantity of land than was exempt and did not make a selection, and as none has been

made by the mortgagee or the officer, the question arises, Was the homestead right lost by his inaction or by that of his successor as to the selection? We have a statute with reference to selection of a homestead where a levy is made on land, a part of which is exempt. It provides that—

"Whenever any levy shall be made upon the lands or tenements of a householder whose homestead has not been selected and set apart, such householder, his wife, agent or attorney may notify the officer in writing at the time of making such levy, or at any time before the sale, of what he regards as his homestead, with a description thereof, and the remainder alone shall be subject to sale under such levy." (R. S. 60-3502.)

The provision is permissive in character. He may make a selection and thus avoid subsequent inconvenience, subsequent contention and perhaps litigation. Its language does not purport to forfeit the homestead right if no selection is made, nor does it operate to make a judgment a lien on the homestead. In *Ferguson v. Kumler*, 27 Minn. 156, a like question arose, and it was said:

"The settlement of this question by the debtor householder is not made by the statute a condition, either to the creation of an exempt homestead or to his continued enjoyment of one already created. On the contrary, it distinctly recognizes the fact that an exempt homestead may exist under the protection of the statute, when the householder is using and occupying for a home land in excess of the statutory limits, and when he has not defined the boundaries of his homestead within the prescribed limits, by setting apart the same 'by metes and bounds' (Gen. St. 1878, ch. 68, § 3), and, in such case, the privilege is accorded him of fixing such boundaries after a levy; but a failure to exercise this privilege is not made a cause affecting his right of exemption, either as a waiver or as a forfeiture." (p. 160.)

See, also, *Ferguson v. Kumler*, 25 Minn. 183; *Kipp v. Bullard*, 30 Minn. 84.

The debtor, of course, cannot defeat a seizure and sale of the excess of land beyond that which is exempt, and the question arises, How shall the extent of the homestead be ascertained? The burden, it would seem, is upon the creditor to find property which is subject to a levy. The law admonishes him that the "Homestead is something towards which the eyes of the creditor may never be turned." (*Mastin v. Gray*, 19 Kan. 458.) And in no event can it be sold under a general execution for debt. Whether a selection is to be made through court action or whether when the officer calls upon one holding the right to make a selection and the latter declines or neglects to do so, or whether in such a case, the officer may set apart the homestead and seize and sell the remainder, is some-

thing for the creditor to decide. That question is discussed at considerable length in 29 C. J. from page 967 to 972, from which it appears that varying views are held in different jurisdictions, but this is due largely to the differing statutes under which the rulings were made. Among other things, it is said that—

"The general rule is that a sale on execution or a judicial sale of property, out of which a homestead may be claimed, without setting apart a homestead for the party entitled thereto, is void, even though part of the proceeds are paid into court as the value of the homestead." (p. 972.)

As to the matter of ascertaining the part of a tract which is subject to a judgment lien, a portion of the tract being a homestead which is exempt and no selection has been made, the Minnesota court inquires what the officers shall do in such a case, and answers it in this way:

"But in case the party, after being so called on, omit to designate the specific land which he regards as his homestead, how is it to be ascertained? How is the sheriff to know what part of the tract levied on he may sell? It would seem that, from the necessity of the case, the sheriff must ascertain it himself and as that requires the setting apart as a homestead of the quantity of land allowed, including the dwelling house, the sheriff must do that. The failure of the party to do it, when called on, would be taken as his consent that the sheriff do it for him. The case, so far as relates to the validity of the sale, is precisely like *Ferguson v. Kumler,* in which such a sale was held void as to the entire tract, there being no data from which to determine what part was exempt and what part not exempt." (*Kipp v. Bullard,* supra, p. 86.)

In view of the humane purpose and policy of the homestead exemption so often' expressed in the cases cited, and the liberal construction which has been consistently placed upon it, we conclude that the sale of the entire tract including the homestead was void, and hence the defendants' claim under the sale cannot be sustained. The fact that there was a confirmation of the sale did not operate to cure the invalidity, and in *Brewer v. Warner,* supra, it was held that the confirmation of a sale of land under a general execution issued upon a judgment for debt is not an adjudication that the land sold was lawfully subject to seizure and sale, and the owner was not thereafter precluded from showing that the property was a homestead and was therefore exempt from sale upon the execution. Having determined that the sale was void, it is unnecessary to consider other grounds of defense advanced by the appellants.

The judgment is affirmed.

HUTCHISON, J., not sitting.