No. 31,578

E. H. West, *Appellee*, v. C. E. Grove and The Peoples Finance Company, *Appellants*.

(31 P. 2d 10.)

Opinion filed April 7, 1934.

*Earl Blake, Harold L. Blake* and *J. E. Alexander*, all of Wichita, for the appellants.

*C. W. McVickers*, of Wichita, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action to restrain an execution sale of plaintiff's homestead.

In March, 1929, the plaintiff and his wife entered into a lease with the defendant, the Peoples Finance Company, for certain real estate not here involved for a five-year term, the lease providing in part as follows:

"In consideration whereof the lessee agrees to lease said premises and to pay as rental therefor the sum of $21.50 per month in advance on the 20th day of each month during said term, and all taxes which may be levied against said property, and further to secure the payment of said rental hereby waives the benefit of the exemption laws of the state of Kansas."

. Default was made, and the finance company sued the plaintiff and his wife, and on August 19, 1932, recovered a judgment for $375, the journal entry of judgment containing a recital to the effect that West and his wife waived the benefit of the exemption laws of the state of Kansas for the payment of said judgment.

About January 1, 1932, West and his wife purchased real estate other than that described in the above lease, and at all times thereafter occupied the same as their homestead.

On November 17, 1932, the finance company caused an execution to issue, and a levy was made by the sheriff upon the homestead of plaintiffs, and publication of notice of sale was commenced.

On December 9, 1932, plaintiff filed his action to restrain the sale by the sheriff, the sheriff, Grove, and the judgment creditor being made parties defendant.

Issues were joined, but at the trial the above facts were agreed on. The court rendered judgment in favor of the plaintiff enjoining the sale. Defendants' motion for a new trial was denied and they appeal.

The question for determination is whether the finance company has the right to sell plaintiff's homestead to satisfy a judgment based on a lease given before the homestead was acquired, the lease having contained a waiver of the exemption laws for rents accruing under the lease.

While the general rule is that a personal exemption cannot be waived by a stipulation in an executory contract like a lease, the rule in Kansas is otherwise by reason of R. S. 67-530, which reads as follows:

"A tenant may waive, in writing, the benefit of the exemption laws of this state for all debts contracted for rents."

Whether under this statute a waiver can be made which will be effective as to an after-acquired homestead, presents a problem having a triple aspect. 1. Does the statute refer to any exemption except of personal property and real estate not the homestead? 2. If it be construed that it does, does it violate the homestead provision of the constitution? 3. Does the constitution provide for a homestead or merely for an exemption?

1. In construing the above statute, it was held in *Kroenert v. Mead,* 59 Kan. 665, 54 Pac. 684, that a tenant may waive the benefit of the exemption laws without the joint consent of his wife. No homestead exemption was involved, but on account of the homestead provision of our constitution, to which reference is made hereafter, it would follow that if the husband alone could waive the benefit of the exemption laws, the waiver could affect only exempt property other than the homestead.

2. Assuming for the moment that in enacting R. S. 67-530 the legislature intended to permit a waiver of homestead rights, what is the situation? It may first be noted that the exemptions which the tenant can waive are of the "exemption laws of this state." It was held in *Burke v. Finley,* 50 Kan. 424, 31 Pac. 1065, that a waiver under the landlord and tenant act did not operate as a

waiver of the exemption created by section 4589 of the General
Statutes of 1889 (wage law), the court saying:

"The waiver contained in the lease aforesaid must be limited to the property
rights of the debtor under the general exemption laws of the state." (p. 427.)

The general exemption laws of the state are those provisions in-
cluded in R. S. 60-3501 to 60-3509, inclusive. Those statutes may
be said to be "exemption laws of this state," but anything that the
legislature might see fit to enact or did enact could in no way limit
the constitutional provisions with respect to a homestead. Article
15, section 9, of the constitution, for our purpose here, may be read
as follows:

"A homestead to the extent of . . . one acre within the limits of an
incorporated town or city, occupied as a residence by the family of the owner
. . . shall be exempted from forced sale under any process of law, and shall
not be alienated without the joint consent of husband and wife when that
relation exists . . . Provided, The provisions of this section shall not apply
to any process of law obtained by virtue of a lien given by the consent of both
husband and wife."

This section was enacted as General Statutes of 1868, chapter 38,
section 1, and now appears as R. S. 60-3501. That it was so enacted
cannot be held to limit its force as a constitutional provision, nor to
extend to R. S. 67-530 any power to dispose of a homestead except in
a constitutional manner. It will be observed that there is provision
that the homestead shall be exempted from forced sale under any
process of law, limited by the proviso that it shall not apply to any
process of law obtained by virtue of a lien given by the consent of
both husband and wife. In this case, giving it full force and effect,
the waiver was made at a time the judgment debtors had no home-
stead right in the real estate involved, did not pretend to have any
rights therein, and therefore the very necessary element of joint
consent was lacking. And another phase may be noted. In *Kroenert
v. Mead,* supra, it was said:

"A waiver of exemption creates no lien on any property. Until seized in
execution, a party who has waived the benefit of the exemption laws may sell
or dispose of his exempt property with as perfect freedom as if no such waiver
had been made." (p. 667.)

If the waiver did not constitute a lien, then no lien was created by
the joint consent of the husband and wife. In so far as homestead
rights are concerned, they hang by no precarious thread. There
must be a valid lien on the particular homestead right when the

waiver is made. The decision *Schloss v. Unsell,* 114 Kan. 69, 70, 216 Pac. 1091, is cited by appellant, but it is readily distinguishable for these reasons: In that case, a widower without minor children or dependents claimed the homestead right, therefore, assuming he had a homestead right, no element of joint consent entered; the waiver specifically covered "any and all homestead and other exemptions to which I or we may be by law entitled," and so far as the opinion shows, the real estate sought to be subjected was the homestead of the party making the waiver at the time the waiver was made.

3. What was the purpose of adopting the homestead provision in our constitution? Space forbids more than a summary of the proceedings of the constitutional convention touching upon the question of homestead. The convention assembled July 5, 1859, and on July 11 a resolution was adopted directing the Committee on Miscellaneous Business "to inquire into and report as to the propriety of inserting in the constitution a clause exempting from forced sale for debts created after the adoption of this constitution, to every head of a family a homestead, the value of which shall not exceed a certain and stated amount." (Wyandotte Constitutional Convention [reprint, 1920], p. 76.) The committee reported back a draft providing that a homestead of 160 acres, or in lieu thereof a house and lot not exceeding in value $2,000, or in lieu thereof, real, personal or mixed property to an amount not exceeding $1,000 belonging to one family, shall be exempt from forced sale, and shall not be alienated without the joint consent of husband and wife. (Id., p. 308.)

Probably no suggested provision occasioned as much debate and difference of opinion as did the question of homestead. Efforts were made to change the amount of real estate, to change the value of property to be held, to limit the homestead to real estate of a certain value. The question of whether the exemption of large tracts of land from forced sale would tend to prevent the development of the state was argued. There was considerable debate and difference of opinion as to whether the purpose was to provide for a homestead or for an exemption law. One of the chief proponents of the homestead as against the exemption was Samuel A. Kingman, afterward one of the first associate justices of this court and later chief justice, and in course of debate in committee of the whole, he said:

"Mr. Chairman, I have an argument against this. Gentlemen do not seem to take the distinction between a homestead and an exemption law. The object of a homestead is very unlike that of an exemption law. And I think the amendment proposed is calculated to defeat the homestead principle. I think that is its object. It is within the recollection of many when it was the settled policy of many of the states, that the land should not be subject to sale for the payment of debts. But the commercial interests of the country, by their power and skill, produced a change which has subjected the farms and homes of the people to be sold under execution, and so nearly converted our people into a class of nomads. I want, if possible, to restore the old policy—to change back again—so that every man or woman, if he plants a tree or she cultivates a rose—that both may beautify and adorn their homes as they may choose, and have the benefit of the protection of the law. But if we put it in the power of the husband or the fortunes of trade to convey by lien or mortgage, the grasping creditor will take away the homestead. I want to separate this subject from anything like the consideration of an exemption law. I approach this as a great measure which rises above all considerations of the rights of debtor and creditor. I abhor an exemption law. This is not of the same nature. This is to go forth, the promulgation of a great principle, that shall encourage the cultivation of the soil." (Id., p. 318.)

And later he made one of the great arguments of the convention, saying:

"To limit the value of the homestead to two thousand dollars, is to say to the owner: so long as your land remains unimproved—so long as it shall remain poor and sterile, it is yours. But the moment you put your labor upon it—the moment you improve and adorn it, and make it inhabitable and beautiful, it shall be taken away from you for the payment of your debts." (Id., p. 337.)

Following that speech and the speech of Mr. Thacher in opposition, an amendment was offered as follows:

"A homestead to the extent of one hundred and sixty acres of farming land, or one acre within the limits of any incorporated town or city, occupied as a residence by the family of the owner," etc. (Id., p. 339.)

which for the first time made residence a requirement, eliminated the idea of value of the property and restricted the homestead right to real estate. After a considerable debate, the amendment was adopted. The language was thereafter changed slightly in two or three particulars, and the proviso with reference to nonapplication to liens given by consent of both husband and wife was added. As a result of more debate, it was decided to submit the homestead provision at the election to be held for ratification or rejection of the constitution on a separate ballot, the vote to be "For the Homestead" or "Against the Homestead." (See Schedule to Constitution,

§ 25.) The result at the election was the provision was adopted by a vote of 8,788 for, 4,772 against.

The manner in which the homestead provision was finally agreed on, and the fact that the views of those who desired to create a homestead limited to a quantity of real estate occupied as a residence by the family of the owner prevailed over the views of those who favored an exemption statute, and the manner and form in which the proposition was submitted to the electorate warrants the conclusion that, although the provision itself uses the word "exempt," it was intended to create and more was created than a simple exemption statute. The manner in which the homestead may be alienated is expressly stated, as are the circumstances against which the homestead right shall not prevail. It has been the settled course of the decisions of this court to construe liberally the homestead provision and not to restrict it. The legislature lacks power to limit the provision, and in our judgment it was never intended by the legislature that the tenant, under R. S. 67-530, could by a general waiver of "the benefit of the exemption laws" waive a homestead right. To accomplish such a waiver requires compliance with the constitutional provision, and in the case at bar such compliance is lacking, for at least two reasons—no homestead nor homestead rights were mentioned in the waiver; under the agreed facts there was no homestead right in the particular real estate at the time the waiver was made.

The judgment of the lower court was correct and is affirmed.