(186 P.3d 820)

No. 97,671

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF AMERIQUEST MORTGAGE SECURITIES, *Appellee*, v. THOMAS P. ROONEY, A/K/A THOMAS PATRICK ROONEY, *et al.*, *Defendants*, and KATHLEEN R. ROONEY AND NU-DELL MANUFACTURING COMPANY INC., *Appellants*.

Opinion filed June 20, 2008.

G. *Gordon Atcheson*, of The Atcheson Law Office, of Westwood, and *Mark D. Hagen*, of Law Office of Mark Hagen, of Mission, for appellants.

*Thomas J. Fritzlen, Jr.*, of Martin, Leigh, Laws & Fritzlen, P.C., of Kansas City, Missouri, for appellee.

Before MARQUARDT, P.J., CAPLINGER and LEBEN, JJ.

LEBEN, J.: From the time our state was founded, Kansas has had a constitutional provision prohibiting creditors from forcing a sale of a family's homestead. Similar language has been included in statutes, and the Kansas Supreme Court has broadly interpreted them over the years. Even though court judgments generally constitute a lien against real estate, the Kansas Supreme Court determined in 1869 that a judgment lien had no effect against a homestead. *Morris v. Ward*, 5 Kan. 239, 244 (1869). Two judgment lienholders now claim that their liens became effective against a homestead at the time judgment was entered; they argue that amendments to the statutes over the years call for a different result here. But we find no indication that the Kansas Legislature intended to change this bedrock principle of Kansas law. We therefore reaffirm longstanding caselaw that a judgment lien does not affect a homestead.

*The Creditors Compete for Priority over the Sale Proceeds of Rooney's Homestead.*

Thomas Rooney entered into a mortgage on his residence with Ameriquest Mortgage Company in December 2004. The Kansas homestead exemption allows liens by consent against a homestead, and a home mortgage is the classic example of a consensual homestead lien. Rooney defaulted on his loan with Ameriquest in February 2005. Ameriquest had assigned the mortgage to Deutsche Bank National Trust Company, and Deutsche Bank filed a foreclosure petition against Rooney in December 2005.

Kathleen Rooney, who is Rooney's ex-wife, and Nu-Dell Manufacturing Company, Inc., compete as creditors with Deutsche Bank for the proceeds from the sale of Rooney's home. Rooney owed Kathleen $5,000 per month in support under a 2002 divorce decree; he stopped making those payments in May 2004. Once he stopped making those payments, the delinquent amounts became judgments against him and—unless precluded by the homestead exemption—would have become judgment liens against any real estate he owned in the county where the judgment was entered. See *Brieger v. Brieger*, 197 Kan. 756, Syl. ¶ 2, 421 P.2d 1 (1966). Nu-Dell had a dispute with Rooney's business, and Nu-Dell won a $38,047 judgment in 2004 against him as the guarantor of the business' debt. Thus, both Kathleen and Nu-Dell were judgment creditors against Rooney before Deutsche Bank filed its mortgage-foreclosure petition in December 2005.

K.S.A. 60-2202(a) provides that "[a]ny judgment . . . shall be a lien on the real estate of the judgment debtor within the county in which judgment is rendered." Both judgments were entered in Johnson County, where Rooney owned his home. A judgment lien is said generally to "attach" to the debtor's real estate when the judgment is rendered (or up to 4 months before judgment is entered under K.S.A. 60-2202[a]), which gives the judgment-lien creditor a right to force the sale of the property to collect the judgment. See *Caple v. Warburton*, 125 Kan. 290, 294-95, 264 P. 47 (1928); Black's Law Dictionary 845 (6th ed. 1990); Black's Law Dictionary 667 (2d ed. 1910). Obtaining the benefit of a judgment

lien, then, is a two-step process. First, the lien must attach to the real estate. Second, the lien may be enforced through some judicial proceeding. Kathleen and Nu-Dell would have had liens against Rooney's home that predated the mortgage unless the homestead exemption somehow precluded that result.

Against this background, Kathleen and Nu-Dell make a clever argument: their liens *attached* to the real estate when their judgments were rendered, and the homestead exemption merely prevents them from *enforcing* or *levying* those judgments as long as the property remains a homestead or until a mortgage creditor brings a foreclosure proceeding. They base this argument on the specific language of the present statutory homestead exemption, K.S.A. 60-2301, which provides that "[a] homestead . . . shall be exempted *from forced sale* . . . ." (Emphasis added.) Kathleen and Nu-Dell argue that they are not forcing the sale but that the mortgage holder is forcing it, which the homestead exemption does not bar. Once the mortgage holder has brought a foreclosure proceeding, however, Kathleen and Nu-Dell claim that their judgment liens should take priority over the later mortgage because their judgments *attached* before the mortgage.

The district court granted summary judgment to Deutsche Bank based on longstanding caselaw that a judgment lien does not attach to a homestead. The underlying facts are not disputed in this case, and the only issue is whether a judgment lien can attach to homestead property. Where facts are not disputed, an appellate court reviews a summary judgment order without deference to the district court's ruling. *Botkin v. Security State Bank*, 281 Kan. 243, 248, 130 P.3d 92 (2006).

I. *Longstanding Caselaw Remains Valid: Judgment Liens Do Not Attach to a Homestead.*

The district court is right that longstanding caselaw supports the proposition that judgment liens do not attach to or affect homestead property. *E.g., Morris v. Ward*, 5 Kan. 239, 244 (1869); *Elwell v. Hitchcock*, 41 Kan. 130, 132, 21 P. 109 (1889); *First Nat'l Bank v. Tyler*, 130 Kan. 308, 310, 286 Pac. 400 (1930); *Jones v. St. Francis Hosp. & School of Nursing*, 225 Kan. 649, 653, 594 P.2d

162 (1979); *In re Marriage of Beardslee*, 22 Kan. App. 2d 787, 792, 922 P.2d 1128, *rev. denied* 260 Kan. 993 (1996); *Pierce v. Bohannon*, 25 Kan. App. 2d 652, 653-54, 967 P.2d 359, *rev. denied* 266 Kan. 1109 (1999); *Bank of Blue Valley v. Plaza Media, Inc.*, No. 92,937, unpublished opinion filed Sept. 29, 2006. Kathleen and Nu-Dell recognize the rule stated in these cases, but they insist that all these cases trace their roots to the 1869 decision in *Morris*, which they contend arose under significantly different statutes governing the reach of judicial liens.

We find their argument unpersuasive for several reasons. First, although Kathleen and Nu-Dell suggest that the present statutory scheme is quite different from the one at issue in *Morris*, we find it essentially unchanged after almost 140 years. Second, under the current statutory scheme, the Kansas Supreme Court has interpreted the homestead exemption to prevent a judgment lien even from attaching to a homestead in 1979 while the statutes were essentially in their present form. *Jones*, 225 Kan. 649. Although Kathleen and Nu-Dell argue that the court simply relied on *Morris*, the *Jones* decision is still a valid precedent. Third, even if the statutory scheme had changed in some substantive way, *Morris* supports a conclusion that the court interpreted the statutory homestead provision consistent with the constitutional provision, which has not changed.

*A. The Present Statutory Scheme Is Essentially Unchanged from the* Morris *Court's Interpretation in 1869, So* Morris *and Later Cases Citing It Remain Valid Precedents.*

Kathleen and Nu-Dell claim that the present statutory scheme is quite different from the one in place when *Morris* was decided in 1869, but that contention is not supported by our review of the statutes over time. We must begin our analysis with the *Morris* decision.

In that case, the Wards sold their homestead to Morris, claiming it was free of any encumbrance. But John Ward had mortgaged the property, and a judgment had also been entered against him. The issue in *Morris* was whether the mortgage and the judgment were encumbrances against the property.

In addressing that claim, the Kansas Supreme Court considered two possible constructions for the Kansas homestead law, which at that time was identical in both its constitutional and statutory form. The first view was that the occupation of property as a homestead merely suspends the operation of any liens. Under that view, any lien "springs full-grown into practical and effective operation" when the property ceases to be a homestead. 5 Kan. at 243-44. The court rejected that view, noting that the framers of the constitutional homestead exemption did not intend to give homesteads "such slight and fragile safeguards." 5 Kan. at 244. The court instead adopted a different view, which was that "no [e]ncumbrance or lien or interest *can ever attach to or affect the homestead,* except the ones specifically mentioned in the constitution. . . . These are liens for taxes, for the purchase money, for improvements made on the homestead, and liens given by the 'joint consent of the husband and wife.' " (Emphasis added.) 5 Kan. at 244.

The court addressed in detail the applicable statutes then in effect, sections 432 and 433 of chapter 26 of the Kansas Compiled Laws of 1862. Section 433 is a precurser to the present judgment-lien statute, K.S.A. 60-2202; it provided that the lands of a debtor in the county where a judgment was entered were bound in satisfaction of that judgment. Section 432 provided that "[l]ands, tenements, goods and chattels, not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution and sold, as hereinafter provided." Comp. L. 1862, ch. 26, sec. 432. The *Morris* court specifically read these sections in tandem in rejecting the argument that a judgment lien lies dormant on homestead property until that property is abandoned as a homestead. The court concluded that, per section 432, liens can only attach to property not exempt by law. 5 Kan. at 246-47. Thus liens never attached to homesteads because they were exempt property.

Kathleen and Nu-Dell maintain that section 432 has no modern counterpart. Based on this premise, they argue that while section 432 prevented a homestead in 1869 from being subject to the payment of judgment debts, no current statutory language prevents it. Thus, their liens would have attached when the judgments were entered. But their factual premise is incorrect: section 432 from

the Compiled Laws of 1862 has retained a place in the statute books ever since. In the 1868 General Statutes of Kansas, the sections on judgment liens and on executions, with its reference to exempt property, moved farther apart, with judgment liens in section 419 and executions in section 443. Section 443 was identical to section 432 from the 1862 statutes. See G.S. 1868, ch. 80, sec. 443. The same concept is retained in today's K.S.A. 60-2401(d), which provides that "a general execution shall be levied upon any real or personal nonexempt property of the judgment debtor." Thus, the 1862 statutes provided that execution of judgments for nonpayment of debts could not reach exempt property; so too today's statutes and those in between. See Comp. L. 1862, ch. 26, sec. 432; G.S. 1909, § 6035 ("Lands, tenements, goods and chattles, not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution . . . ."); G.S. 1935, 60-3403 (same); G.S. 1949, 60-3403 (same); K.S.A. 60-2401(d) (execution may be levied "upon . . . nonexempt property of the judgment debtor"). Similarly, the 1862 statutes provided that a judgment lien attached to lands of the debtor in the county where the judgment was entered; so too today's statutes and those in between. See Comp. L. 1862, ch. 26, sec. 433 ("The lands and tenements of the debtor, within the county where the judgment is entered, shall be bound for the satisfaction thereof."); G.S. 1909, § 6011 ("Judgments . . . shall be liens on the real estate of the debtor within the county in which judgment is rendered."); G.S. 1935, 60-3126 (same); G.S. 1949, 60-3126 (same); K.S.A. 60-2202(a) ("Any judgment . . . shall be a lien on the real estate of the judgment debtor within the county in which judgment is rendered.").

Because the relevant statutes are essentially the same today as they have been throughout our state's history, *Morris* remains good law.

The only cases that have distinguished between the attachment of a lien and the ability to force a sale have arisen in the context of tax liens, which are exceptions to the homestead exemption. In *Homestead Land Title Co. v. United States*, 249 Kan. 569, 819 P.2d 660 (1991), the Kansas Supreme Court did note the distinction

between attachment and forced sale, stating that "[t]he Homestead Exemption does not discuss whether a lien can attach." 249 Kan. at 574. But when the court revisited a similar issue 2 years later in *Bank of Kansas v. Davison*, 253 Kan. 780, 861 P.2d 806 (1993), it clarified its position by highlighting that the decision in *Homestead* turned on the special status of tax liens under the homestead exemption. The court concluded, "In *Homestead*, we clearly placed the sales tax lienholder above the status of a general lien creditor." 253 Kan. at 792. *Homestead* and *Bank of Kansas* thus fall in line with *Morris* and *Jones*. Read together, these cases support the conclusion that judgment liens in Kansas do not attach to homestead property, regardless of whether the property is subject to forced sale, unless the lien is one of the three types specifically excepted from the homestead exemption.

*B. Kansas Supreme Court Decisions Interpreting Judgment Liens to Have No Effect on a Homestead Are Entitled to Precedential Deference.*

The 1979 holding in *Jones* undercuts Kathleen and Nu-Dell's argument that the result in *Morris* does not apply under the modern statutes because *Jones* arose under current statutory provisions. In *Jones*, the court concluded that a judgment against the debtor "did not become a lien on the homestead." 225 Kan. at 653. Although court decisions that construe a statute are no longer considered "part of the warp and the woof of the legislation," *Francis v. Southern Pacific Co.*, 333 U.S. 445, 450, 92 L. Ed. 798, 68 S. Ct. 611 (1948), the state's highest court's interpretation of a statute is a particularly strong precedent, generally meaning that it is left to the legislature, not the courts, to make further changes. See Eskridge, Frickey & Garrett, Legislation and Statutory Interpretation, pp. 284-90 (2d ed. 2006). Of course, the Court of Appeals must follow Kansas Supreme Court precedent absent some indication that court is changing its position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007).

Further, we have already demonstrated that the statutory scheme has not changed in any essential way since the *Morris* decision. From *Morris* to *Jones*, the Kansas Supreme Court has con-

sistently interpreted the reach of judgment liens under similar statutes. Because the statutory scheme has remained essentially the same throughout these years, those precedents also support continued adherence to the rule that judgment liens do not attach against a homestead. We see no reason to conclude, as Kathleen and Nu-Dell suggest, that these precedents are outdated or that they have been superseded by statutory changes.

*C. Even if the Statutory Scheme Has Changed in Some Way, the Homestead Exemption Statute Has Been Interpreted in Part Based on its Unchanged Constitutional Counterpart.*

The constitutional homestead exemption has not changed in any material way since the *Morris* decision, and its language has significantly influenced the interpretation of related statutes. To the extent that the statutory homestead exemption is interpreted in similar ways to its constitutional counterpart, the absence of a material change to the constitutional provision also suggests that the statute continue to be interpreted as it has been since *Morris*.

The court in *Morris* noted that interpreting section 433 (the precursor to the judgment lien statute now found in K.S.A. 60-2202) to mean that a judgment creditor has a lien on a homestead that can be enforced once the homestead is abandoned would be "in direct conflict with the spirit of the constitution, if not with the letter." 5 Kan. at 247. The court posited that allowing a lien to attach, even without enforcement rights, would prevent families from changing homesteads and perhaps prohibit them from acquiring new homesteads—an outcome contrary to the policy behind the homestead protection, which was to protect families from destitution. 5 Kan. at 247-48. The Kansas Supreme Court has continued to note that "[t]he homestead exemption in K.S.A. 60-2301 is derived from" the constitutional homestead exemption. *Redmond v. Kester*, 284 Kan. 209, Syl. ¶ 2, 159 P.3d 1004 (2007). It has also broadly interpreted the homestead exemption statute, in part based on the liberal construction given to the constitutional counterpart. 284 Kan. 209, Syl. ¶¶ 1, 2; see *West v. Grove*, 139 Kan. 361, 366, 31 P.2d 10 (1934); *Stowell v. Kerr*, 72 Kan. 330, 331, 83 P. 827 (1905). The interpretation of the *Morris* court, to

which we continue to adhere, is in keeping with these interpretive principles.

We note that Kathleen and Nu-Dell have suggested that Rooney was entitled only to the *statutory* homestead exemption and was not covered by the *constitutional* provision. This is because they contend that Rooney was a single person and not entitled to the benefit of the constitutional protection when a homestead is "occupied as a residence by the *family* of the owner." (Emphasis added.) Kan. Const. Art. 15, § 9. After the Kansas Supreme Court declared that the constitutional homestead exemption's failure to cover single homeowners was constitutional, *Beard v. Montgomery Ward & Co.*, 215 Kan. 343, 350, 524 P.2d 1159 (1974), the statutory homestead exemption was amended to include them. L. 1980, ch. 176, sec. 2 (providing homestead exemption for "the owner" whether residing with or without a family). While no similar change has been made to the constitutional provision, that does not suggest that potential benefits under the exception have been substantively changed for those to whom the exemption applies.

Kathleen and Nu-Dell have presumably argued that the constitutional provision is not applicable since it clearly has not been amended in any relevant way since the days of *Morris*. As we have noted, though, cases from *Morris* through *Redmond* suggest that the statutory homestead exemption must be interpreted in a manner consistent with the constitutional provision from which it is derived. In any event, however, this argument rests on a false premise. Even if Kathleen and Nu-Dell are right that the constitutional provision does not aid the single homeowner, Rooney was still part of a family while he resided in this home. He had joint custody of his children, and he testified that they lived with him at his home. No more is required to obtain the benefit of the constitutional homestead exemption, under which the definition of family has been liberally construed. See *In re Estate of Phillipe*, 23 Kan. App. 2d 436, 933 P.2d 151, *rev. denied* 262 Kan. 961 (1997) (protecting homestead exemption for the decedent's estate even though the decedent had moved to nursing home before his death, finding that his adult son was still part of the decedent's family even though the son did not occupy residence continuously from

minority on). In addition, we find no relevant difference between the constitutional exemption and the statutory one on the issue before us.

II. *This Case Is Not Moot.*

Deutsche Bank has argued that this case is moot because Kathleen and Nu-Dell failed to file a petition or cross-claim seeking adjudication of their liens. In support, Deutsche Bank cites *Fidelity Bank v. King,* 33 Kan. App. 2d 804, 109 P.3d 180 (2005), *aff'd* 281 Kan. 1278, 136 P.3d 465 (2006). In that case, a junior mortgage holder was served with a petition and summons in a foreclosure action brought by the senior mortgage holder. The junior mortgage holder did not answer or otherwise plead, and this failure waived the junior mortgage holder's rights to surplus sale proceeds. 281 Kan. at 1283-86.

Our case is quite different. Kathleen and Nu-Dell both filed answers, something the junior mortgage holder in *Fidelity Bank* did not do. In addition, Kathleen and Nu-Dell filed for summary judgment, specifically claiming that their liens had priority over Deutsche Bank's mortgage. Because the district court denied their motion and awarded priority to Deutsche Bank, the actual controversy remains. Even though the property has been sold, the controversy is not moot because it relates to the order in which the parties are entitled to proceeds from the foreclosure sale.

Deutsche Bank separately argues that Kathleen and Nu-Dell have acquiesced in the judgment of the district court by failing to bid on the property at the foreclosure sale and by not seeking a stay of the judgment through the posting of a supersedeas bond, which would have stayed the judgment on appeal. Deutsche offers no legal authority for this assertion, and our court has recently held that failure to participate in the foreclosure sale or to seek a stay does not constitute acquiescence in the judgment. *Citifinancial Mortgage Co. v. Clark,* 39 Kan. App. 2d 149, 155-57, 177 P.3d 986 (2008).

The judgment of the district court is affirmed.