No. 115,977[1]

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERSA A. CHANEY,
*Appellee*,

v.

JEFFREY D. ARMITAGE and JERALD D. ARMITAGE, Co-Trustees of
THE DON A. ARMITAGE REVOCABLE TRUST
(In the Matter of the Estate of Don A. Armitage, Deceased),
*Appellants*.

SYLLABUS BY THE COURT

1.

A judgment creditor can record an unpaid judgment as a lien on the real estate of the judgment debtor within the county in which judgment is rendered. Generally, a judgment lien gives the judgment lien creditor a right to force the sale of the property to collect the judgment unless the property is specifically exempted from levy, attachment, or execution by another statutory provision. Kansas' homestead exemption, which protects homes from forced sale, is one of those exemptions and precludes a judgment lien from attaching to homestead property.

2.

Once it has been established that a homestead interest in property exists, there is a presumption that the homestead continues until the contrary is shown. The burden of proof is on the party attempting to defeat that interest to show by positive and clear

[1]**REPORTER'S NOTE:** Previously filed as an unpublished opinion, the Supreme Court granted a motion to publish pursuant to Rule 7.04 (2017 Kan. S. Ct. R. 45). The published version was filed with the Clerk of the Appellate Courts on September 14, 2017.

evidence that the homestead interest has been destroyed or abandoned. The standard of proof to show the homestead interest is destroyed or abandoned requires a showing that the owner has been removed from the property and has no intent to return.

3.

Property held by a self-settled, revocable trust is available to satisfy the settlor's creditors the same as if the property was held by an individual; thus, Kansas' homestead exemption precludes a judgment lien from attaching to homestead property held by a self-settled, revocable trust unless the homestead interest is destroyed or abandoned.

4.

After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors.

5.

A debtor's right to an exemption is a personal one which does not survive the death of the person in whose favor it exists.

Appeal from Montgomery District Court; GARY R. HOUSE, judge. Opinion filed May 19, 2017. Affirmed.

*John R. Horst*, of John R. Horst, P.A., of Caney, for appellants.

*Joseph H. Cassell*, of Eron Law, P.A., of Wichita, for appellee.

Before GREEN, P.J., STANDRIDGE and GARDNER, JJ.

STANDRIDGE, J.:  Prior to his death, Don A. Armitage conveyed his homestead to the Don A. Armitage Revocable Living Trust (the Trust). Armitage named his sons,

2

Jeffrey D. Armitage and Jerald D. Armitage (the defendants) as the beneficiaries and successor co-trustees of the Trust. Tersa A. Chaney later obtained a money judgment against Armitage. After Armitage's health required him to move from his homestead to a care facility, Chaney attempted to enforce her judgment against Armitage by filing an application for writ of special execution against the homestead. The district court issued the writ, directing the sheriff to levy execution on the homestead. Armitage died shortly thereafter, leaving no spouse or children living at the homestead. The defendants moved to set aside and vacate the writ of special execution on grounds that the homestead was exempt from Chaney's judgment lien. The district court denied their motion, concluding that the homestead was subject to summary execution to satisfy Chaney's judgment because the homestead exemption expired upon Armitage's death.

FACTS

The relevant facts are undisputed. On April 22, 2010, Armitage created the Trust for the purpose of holding certain real and personal property. Armitage signed the instrument as both the grantor and trustee, and he named the defendants as the beneficiaries and successor co-trustees of the Trust. The Trust provided, in relevant part, that upon Armitage's death, the trustees "shall pay from the trust estate all of the just debts and expenses" of the grantor and that "said trust shall terminate and all assets remaining therein shall be paid and distributed" in equal shares to the defendants.

That same day, Armitage conveyed to the Trust by quit claim deed certain real estate located in Montgomery County, Kansas. On October 13, 2013, Armitage filed a Declaration of Homestead, which described this real estate as his homestead.

On April 8, 2014, the Montgomery County District Court entered a judgment in case No. 11 CV 33I against Armitage and in favor of Chaney in the amount of $180,372.69.

3

On May 31, 2015, Armitage was required to move from his homestead to a care facility due to his failing mental and physical health. In an attempt to enforce her judgment against Armitage, Chaney filed an application for writ of special execution against Armitage's homestead. On June 9, 2015, the district court issued the writ and directed the sheriff to levy execution on the homestead.

On July 11, 2015, Armitage died. At the time of his death, Armitage was single and no children or other family were living at the homestead. The defendants filed a petition for probate of Armitage's will in case No. 2015 PR 25C. The will was admitted to probate, and the defendants were appointed co-executors of Armitage's will. Chaney filed a petition for allowance and classification of demand, seeking to obtain her judgment from Armitage's estate. The inventory and valuation of Armitage's estate reflected probate assets in the amount of $1,048.40. Chaney and the defendants filed a joint motion requesting consolidation of case No. 11 CV 33I and case No. 2015 PR 25C. The district court granted the motion and ordered that the cases be consolidated.

Pursuant to the terms of the Trust, the defendants were named the successor co-trustees of the Trust and they were also named as substitute defendants in case No. 11 CV 33I. The defendants filed a motion to set aside and vacate the writ of special execution, alleging that no judgment lien could ever attach to Armitage's homestead.

Following a hearing on the matter, the district court denied the defendants' motion. Specifically, the court held that Chaney's judgment lien did not attach to the property during Armitage's lifetime because it was protected by the homestead exemption. The court further held that the exemption expired upon Armitage's death on July 11, 2015, because no spouse or children resided on the property at that time. As a result, the court concluded that all assets of the Trust, including the homestead property, were subject to summary execution to satisfy Chaney's judgment pursuant to K.S.A. 58a-505(a)(3).

4

The defendants moved to alter or amend the district court's decision. They alleged, in part, that (1) Chaney's judgment could not attach to the homestead property upon Armitage's death because title immediately vested in the defendants as Trust beneficiaries, (2) making homestead property subject to creditor claims under K.S.A. 58a-505(a)(3) impairs the homestead owner's constitutional right to alienate or transfer the homestead free of claims of general creditors, and (3) the homestead property was still exempt because Jeffrey had occupied the property as of late August 2015 and intended to make it his homestead.

The district court denied the defendants' motion and reaffirmed its prior holding that Chaney's judgment lien attached to the homestead property upon Armitage's death. Specifically, the court ruled that the property ceased to be a homestead at Armitage's death and that the exemption had not survived because Jeffrey's occupancy was not continuous. The district court further ruled that K.S.A. 58a-505(a)(3) did not impair Armitage's constitutional right to alienate or transfer the homestead property free and clear of the judgment lien that existed during his lifetime.

ANALYSIS

On appeal, the defendants argue the district court erred by denying their motion to set aside and vacate Chaney's writ of special execution. Specifically, they allege that (1) a creditor's judgment lien cannot ever attach to homestead property even after the death of a homestead owner and (2) allowing a judgment lien to attach to homestead property under K.S.A. 58a-505(a)(3) is contrary to a homestead owner's constitutional right to alienate or transfer homestead rights free of the claims of general creditors.

Resolution of these issues involves the interpretation of the homestead provisions contained in the Kansas Constitution and statutes. Issues involving constitutional or

5

statutory interpretation are questions of law over which an appellate court has unlimited review. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009). To the extent that resolution of the defendants' claims involves the interpretation of trust provisions, the interpretation and legal effect of written instruments also involve matters of law over which we exercise independent review. *Hamel v. Hamel*, 296 Kan. 1060, 1068, 299 P.3d 278 (2013).

K.S.A. 60-2202(a) provides that "[a]ny judgment . . . shall be a lien on the real estate of the judgment debtor within the county in which judgment is rendered." Chaney's judgment was rendered in Montgomery County, where Armitage owned his homestead property. Generally, a judgment lien will "attach" to the debtor's real estate when the judgment is rendered, which gives the judgment lien creditor a right to force the sale of the property to collect the judgment. See *Deutsche Bank Nat'l Trust Co. v. Rooney*, 39 Kan. App. 2d 913, 914, 186 P.3d 820 (2008). But Kansas' homestead exemption, which protects homes from forced sale, precludes a judgment lien from attaching to homestead property. See 39 Kan. App. 2d at 915 ("[L]ongstanding caselaw supports the proposition that judgment liens do not attach to or affect homestead property.").

Kansas' homestead exemption "was established for the benefit of the family and society 'to protect the family from destitution, and society from the danger of her citizens becoming paupers.'" *Redmond v. Kester*, 284 Kan. 209, 212, 159 P.3d 1004 (2007) (quoting *Morris v. Ward*, 5 Kan. 239, 244 [1869]). Article 15, § 9 of the Kansas Constitution provides, in pertinent part:

> "A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists."

In addition, our legislature has enacted several statutory provisions relating to the homestead exemption. See K.S.A. 59-401 *et seq.* (probate code); K.S.A. 60-2301 *et seq.* (code of civil procedure). Relevant to the probate proceedings in this case, K.S.A. 59-401 states:

> "A homestead to the extent of 160 acres of land lying without, or of one acre lying within, the limits of an incorporated city, or a manufactured home or mobile home, occupied by the decedent and family, at the time of the owner's death, as a residence, and continued to be so occupied by the surviving spouse and children, after such death, together with all the improvements on the same, shall be wholly exempt from distribution under any of the laws of this state, and from the payment of the debts of the decedent, but it shall not be exempt from sale for taxes thereon, or for the payment of obligations contracted for the purchase thereof, or for the erection of improvements thereon, or for the payment of any lien given thereon by the joint consent of husband and wife. The title to the homestead property of a decedent shall pass the same as the title to other property of the decedent."

Once it has been established that a homestead interest in property exists, there is a presumption that the homestead continues until the contrary is shown. The burden of proof is on the party attempting to defeat that interest to show by positive and clear evidence that the homestead has been abandoned. Two tests must be met before a homestead interest may be destroyed or abandoned: (1) There must be a removal from the property and (2) there must be an intent not to return. *In re Estate of Phillippe*, 23 Kan. App. 2d 436, 438, 933 P.2d 151 (1997) (quoting *In re Estate of Fink*, 4 Kan. App. 2d 523, 527-28, 609 P.2d 211 [1980]).

The district court held that Chaney's judgment lien did not attach to Armitage's homestead property during his lifetime because he resided there until he entered the care facility on May 15, 2015, and always intended to return to the homestead property until his death on July 11, 2015. The fact that Armitage had conveyed the homestead property to the Trust did not change his ability to claim the homestead exemption while he was

7

still living. Although K.S.A. 58a-505(a)(1) provides that during the lifetime of the settlor, the property of a revocable trust is subject to the claims of the settlor's creditor, the statute contains no language excluding the property held by the trust from the application of the exemptions found in K.S.A. 2016 Supp. 60-2301. Therefore, the property held by a self-settled, revocable trust is available to satisfy the settlor's creditors unless the property is specifically exempted from levy, attachment, or execution by another statutory provision. See *Redmond*, 284 Kan. at 218 (holding that debtor may claim homestead exemption in residence which was transferred prior to bankruptcy by debtor to a revocable trust). Thus, during Armitage's lifetime, he could claim a homestead exemption in the property conveyed to the Trust.

But the district court held that upon Armitage's death, the property lost its homestead exemption and was subject to execution to satisfy Chaney's judgment pursuant to K.S.A. 58a-505(a)(3). This statute allows a creditor to reach revocable trust assets after a settlor's death:

> "After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors, costs of administration of the settlor's estate, the expenses of the settlor's funeral and disposal of remains, the homestead, homestead allowance, the elective share rights of the surviving spouse pursuant to K.S.A. 59-6a209, and amendments thereto, and statutory allowance to a surviving spouse and children to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses, and allowances." K.S.A. 58a-505(a)(3).

The defendants argue that K.S.A. 58a-505(a)(3) should not permit Chaney's judgment to attach to the homestead property because the judgment was against Armitage individually and not the Trust. The defendants claim that pursuant to the terms of the Trust, Armitage's beneficial interest in the Trust terminated upon his death and title to the

8

homestead property immediately vested in the defendants, who, as trust beneficiaries, had contingent remainder interests in title to the homestead property.

The defendants' argument lacks merit. First, accepting the defendants' claim that their contingent remainder interests in the homestead property automatically vested upon Armitage's death would result in all trust assets automatically vesting in every beneficiary of every self-settled trust in Kansas. Such a result would render K.S.A. 58a-505(a)(3) meaningless, as no creditor would ever be entitled to payment for any claims against a settlor. We presume the legislature does not intend to enact meaningless legislation. See *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014).

Additionally, *Commerce Bank, N.A. v. Bolander*, 44 Kan. App. 2d 1, 239 P.3d 83 (2007)—a case relied on by Chaney—is instructive. In *Bolander*, a bank brought an action against a settlor's estate and revocable trust seeking the balance owed on a promissory note the settlor executed before her death. The district court granted summary judgment in favor of the bank and ruled that the bank could attach assets in the trust, which included an individual retirement account (IRA), to satisfy its judgment for the promissory note. 44 Kan. App. 2d at 4-6. On appeal, a panel of this court affirmed the district court. The panel discussed the nature of a revocable living trust:

> "A revocable living trust, such as the trust in this case, is a trust established during the settlor's lifetime in which the settlor reserves the right to alter, amend, or revoke the trust and may retain the right during his or her lifetime to direct the disposition of principal and income. At the death of the settlor, the trust assets are disposed of in accordance with the terms of the trust document." 44 Kan. App. 2d at 13.

The panel also considered the legislature's intent when it enacted K.S.A. 58a-505(a)(3) and determined that allowing a creditor, after a settlor's death, to reach assets that were protected by the trust during the settlor's life

9

"promotes a valid public policy that a person ought not to be able to shelter his or her assets from creditors in a discretionary trust of which he or she is the beneficiary and thus be able to enjoy all the benefits of ownership of the property without any of the burdens." 44 Kan. App. 2d at 13.

Notably, the panel held that the statutory exemptions surrounding an IRA or its benefits to the settlor are personal to the settlor, are not transferable, and disappear upon the death of the settlor:

"'The right to an exemption exists solely by virtue of express constitutional or statutory provisions. Accordingly, any determination of persons or classes of persons who may claim exemptions in any particular state must be directed to that state's constitution and statutes and, unless the debtor claiming an exemption is one of the persons or classes of persons therein named, his claim cannot prevail, because a debtor's right to an exemption is a personal one which does not survive the death of the person in whose favor it exists.'" 44 Kan. App. 2d at 15 (quoting 31 Am. Jur. 2d, Exemptions § 238 [2002]).

In the present case, the defendants could not claim a homestead exemption under the relevant constitutional and statutory provisions. Armitage's property no longer qualified as a homestead upon his death because it was not "occupied by the decedent and family, at the time of the owner's death" and did not "continue[] to be so occupied by the surviving spouse and children, after such death." See K.S.A. 59-401; see also Kan. Const. Art. 15, § 9 (defining homestead as land "occupied as a residence by the family of the owner"). The record reflects that Armitage lived alone on the property and passed away on July 11, 2015. Jeffrey did not move onto the property until late August 2015. The defendants do not dispute these facts or otherwise allege, as they did below, that Jeffrey's occupation was sufficiently continuous to maintain the exempt character of the homestead property.

The defendants acknowledge the holding in *Bolander*, but attempt to distinguish it on grounds that it addressed a statutory exemption, rather than a constitutional exemption like the one at issue here. They allege that making homestead property subject to claims under K.S.A. 58a-505(a)(3) impairs a homestead owner's constitutional right to alienate or transfer the homestead free of creditors' claims. The defendants' argument is based on a theory that the constitutional right to alienate or transfer the homestead free of creditors' claims need not be exercised by the owner during his or her lifetime. They assert that so long as there is a free and voluntary transfer of some interest in the homestead, the time at which the transfer becomes effective is irrelevant. The defendants suggest that like a transfer on death deed, which passes directly to beneficiaries free of general creditors' claims, the quit claim deed Armitage executed to the Trust transferred some interest in the homestead property to the defendants, which should be protected under the constitutional right to alienate the homestead free of creditor claims.

The defendants' argument is unpersuasive. In *Citizens State Bank & Trust Co. v. Grollmes*, No. 63,499, 1989 WL 98658 (Kan. App. 1989) (unpublished opinion), this court recognized a homestead owner's right to convey homestead property free and clear of the claims of general creditors. In that case, the bank obtained a judgment against the decedent during the decedent's lifetime. Prior to his death, the decedent conveyed homestead property to his daughters. After the decedent's death, the bank attempted to attach the property in satisfaction of its judgment. A panel of this court affirmed the district court's ruling dissolving the writ of attachment after concluding that the decedent had the ability under Kansas law to convey the homestead free and clear of the judgment.

K.S.A. 58a-505(a)(3) did not impair Armitage's ability to transfer his homestead property during his lifetime. Armitage had the ability under Kansas law to convey the homestead property directly to the defendants, but he did not elect to do so. Instead, Armitage named his revocable trust as the beneficiary of the homestead property. Armitage's power to amend or revoke the Trust died with him. The language of the Trust

11

provided that upon Armitage's death, the trustees were required to "pay from the trust estate all of the just debts and expenses" of the grantor and that "said trust shall terminate and all assets remaining therein shall be paid and distributed" in equal shares to the defendants. The defendants could not claim the homestead exemption upon Armitage's death because they were not occupying the homestead at the time of his death or continuously thereafter. See K.S.A. 59-401. As a result, the homestead property became part of the Trust assets. The legislature has determined that assets in a revocable trust are subject to the claims of creditors at the death of the settlor. See K.S.A. 58a-505(a)(3). The district court correctly determined that the homestead property was subject to execution to satisfy Chaney's judgment. As such, the court properly denied the defendants' motion to set aside and vacate the writ of special execution.

Affirmed.